(No. 66462.—

ANITA MITSUUCHI, Appellee, v. THE CITY OF CHI-
CAGO *et al.* (Juan Arjona, Appellant).

*Opinion filed December 15, 1988.*

490

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Joseph A. Moore, of counsel), for appellant.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Robert R. Dlugajczyk, of counsel), for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On July 10, 1983, at about 5 p.m., plaintiff, Anita Mitsuuchi, a Chicago police officer, was a passenger in a Chicago police department squad car. The squad car was driven by defendant, Juan Arjona, a fellow police officer. Near the intersection of Wrightwood and Kedzie Avenues, the driver, Arjona, swerved the squad car to avoid striking a vehicle that had driven through a stop sign. The squad car left the roadway and struck a light pole. Plaintiff was injured, and brought a common law action in negligence against defendants, City of Chicago (City) and Arjona, her fellow officer.

Defendants filed a motion to dismiss plaintiff's complaint on the grounds that plaintiff's action was barred by sections 22—306 and 22—307 of the Illinois Pension

Code (Pension Code) (Ill. Rev. Stat. 1981, ch. 108½, pars. 22—306, 22—307), and sections 22—18 through 22—22 of the Chicago Municipal Code (Chicago Municipal Code §§22—18 through 22—22 (1969)). The circuit court of Cook County dismissed with prejudice plaintiff's complaint against the City and Arjona.

The appellate court affirmed the circuit court's dismissal of plaintiff's complaint against the City, but reversed the circuit court's dismissal of plaintiff's claim against defendant Arjona, and remanded the cause to the circuit court of Cook County. (164 Ill. App. 3d 815.) We allowed defendant Arjona's petition for leave to appeal pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315).

The issue presented is whether sections 22—306 and 22—307 of the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, pars. 22—306, 22—307) and sections 22—18 through 22—22 of the Chicago Municipal Code (Chicago Municipal Code §§22—18 through 22—22 (1969)) bar a police officer from bringing a common law negligence action against a fellow police officer for personal injury sustained in the line of duty. Does a negligent police officer share the City's immunity (under the Pension Code) from a common law negligence action by a fellow police officer for injuries suffered in the line of duty?

Before answering this question, we shall briefly summarize pertinent provisions of the Pension Code. Section 22—306 of the Pension Code provides in part:

"The corporate authorities of any city or the village may provide by ordinance that in case of an accident resulting in an injury to or death of a policeman or fireman in the employ of such city or village while in the performance of his duties, the officer at the head of the department or such other officer as may be designated may secure and provide proper medical care and hospital treatment for any such policeman or fireman. The city or

village may incur the expense aforesaid and appropriate and pay for the same.

> If any such accident shall be due to the negligence of some person or corporation that would be liable in damages therefor, the city or village may recover any expense of medical care and hospital treatment expended by it from the person or corporation liable." Ill. Rev. Stat. 1981, ch. 108½, par. 22—306.

If this provision were viewed in isolation, the benefit of it to a municipality might be uncertain. There is, however, a substantial *direct financial incentive* for a municipality to enact an ordinance in accordance with section 22—306. This incentive is set forth in section 22—307 of the Pension Code as follows:

> "Common law or statutory rights barred. Whenever any city or village enacts an ordinance pursuant to this Division, no common law or statutory right to recover damages against such city or village for injury or death sustained by any policeman or fireman while engaged in the line of his duty as such policeman or fireman, other than the payment of the allowances of money and of the medical care and hospital treatment provided in such ordinance, shall be available to any policeman or fireman who is covered by the provisions of such ordinance, or to anyone wholly or partially dependent upon such policeman or fireman, or to the legal representative of the estate of such policeman or fireman, or to anyone who would otherwise be entitled to recover damages for such injury or death." Ill. Rev. Stat. 1981, ch. 108½, par. 22—307.

The City did, in fact, invoke the authority vested in it by section 22—306 of the Pension Code; the City enacted sections 22—18 through 22—22 of the Municipal Code, which sections set forth the City's responsibilities to pay for the care and treatment of injuries sustained by the City's police officers while in the performance of their duties. In this regard, section 22—19 of the Municipal Code provides:

"The committee on finance of the city council is hereby authorized, directed and empowered to provide for payment for proper medical care and hospital treatment for accidental injuries sustained by any policeman *** while in the performance of his duties ***." Chicago Municipal Code §22—19 (1969).

The appellate court found that because the City had enacted (pursuant to section 22—306 of the Pension Code) sections 22—18 through 22—22 of the Municipal Code, plaintiff could not maintain a common law negligence action against it, and neither party has questioned this ruling. Arjona, however, questions the correctness of the appellate court's ruling that he was not protected under section 22—307 of the Pension Code as an employee of the City. Arjona acknowledges that section 22—307 does not explicitly mention *employees* as being immune from common law negligence suits by their co-workers. He contends, however, that reading the legislation in light of its apparent purpose, we must construe the language granting immunity to a "city or village" as encompassing actions against the fellow officers of the city or village.

As this court noted in *Krimmel v. Eielson* (1950), 406 Ill. 202, the cardinal task of statutory construction is to ascertain the intent of the General Assembly. Although the General Assembly did not record, in any currently available documents, a discussion of the objective of sections 22—306 and 22—307, the purpose can hardly be doubted. The statutory mechanism is similar to that of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, pars. 138.1 through 138.30), and Illinois courts have indicated that it is proper to utilize statutes on similar subject matters as an aid to the construction of a statutory provision at issue (see *Bergin v. Board of Trustees* (1964), 31 Ill. 2d 566, 574; *Freberg v. Board of Trustees of Firemen's Pension Fund* (1970), 128 Ill. App. 2d 369).

This court has stated repeatedly the objectives of the Workers' Compensation Act, as gleaned from the Act itself. We discussed the purposes of the Workers' Compensation Act in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, as follows:

"Pursuant to the statutory scheme implemented by the Act, the employee gave up his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment became automatic without regard to any fault on his part. The employer, who gave up the right to plead the numerous common law defenses, was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme, and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. [Citation.] This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries. [Citation.]" 74 Ill. 2d at 180-81.

Thus, the Workers' Compensation Act, and in our view the Pension Code provisions here at issue, are intended in part to protect the employee from the financial burden of either (1) bearing certain costs himself or (2) litigating the matter against his employer to a distant and uncertain conclusion. We note parenthetically that the supreme court of at least one other State has found that statutes governing disability, pension and death benefits for fire fighters and police officers serve purposes equivalent to workers' compensation (see *Goebel v. City of Cedar Rapids* (Iowa 1978), 267 N.W.2d 388), and that the court in *Sweeney v. City of Chicago* (1971), 131 Ill. App. 2d 537, observed, "The system created for the compensation of injured police officers under the Illinois Pension Code is analogous to that established by the Work[ers'] Compensation Act" (131 Ill. App. 2d at 542). It would, in our view, be incongruous to, through a stat-

utory scheme, strive to protect an employee from bearing the medical cost of injuries which he negligently inflicts upon *himself* in the course of employment, and yet require him to bear such costs of injuries which he negligently inflicts on a *co-employee*. The incongruity of such a result is a strong indication that such a result was not intended.

Moreover, in the context of workers' compensation, this court has already held that a co-employee receiving workers' compensation cannot maintain a common law negligence action for the injury against a fellow employee. (*O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167, *overruled on other grounds, Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618.) In *O'Brien*, this court was relying in part on language explicitly authorizing an action against certain nonemployees, and stated that such language implicitly indicated that an action against a fellow employee was proscribed. The court also emphasized, however, the importance of such a construction for policy reasons, stating:

> "In view of the fact that a considerable portion of industrial injuries can be traced to the negligence of a coworker, [litigation between coworkers] could reach staggering proportions, and would not only tend to encourage corrupt and fraudulent practices but would also disrupt the harmonious relations which exist between coworkers." 10 Ill. 2d at 174.

There is also another persuasive reason for construing section 22—307 of the Pension Code as applying to a co-employee. The reason is that the General Assembly itself, in enacting other legislation, has impliedly indicated that our construction is correct. The other legislation is section 1—4—5 of the Illinois Municipal Code, which provides, in pertinent part:

> "In case any injury to the person or property of another is caused by a member of the police department of

a municipality having a population of 500,000 or over, while the member is engaged in the performance of his or her duties as a police officer, and without the contributory negligence of the injured person or the owner of the injured property, or the agent or servant of the injured person or owner, the municipality in whose behalf the member of the municipal police department is performing his or her duties as a police officer shall indemnify the police officer for any judgment recovered against him or her as the result of such injury, except where the injury results from the wilful misconduct of the police officer." Ill. Rev. Stat. 1987, ch. 24, par. 1—4—5.

This indemnity provision first appeared in substantially identical form in Laws 1945, page 477, section 1 (1945 Ill. Laws 477 (§1)). (An earlier version can be traced to Laws 1943, page 419, section 1 (1943 Ill. Laws 419 (§1)).) This indemnity provision thus was enacted *after* what are now sections 22—306 and 22—307 of the Pension Code, which permit a city to limit its liability for certain injuries. (See, with respect to section 22—306, Laws 1929, page 243, section 1 (1929 Ill. Laws 243 (§1)), and, with respect to section 22—307, Laws 1939, page 394, section 1 (1939 Ill. Laws 394 (§1)).)

It is apparent from viewing section 1—4—5 of the Municipal Code that if we construed section 22—307 of the Pension Code so as *not* to encompass fellow officers, the intent of section 22—307 of the Pension Code would often be thwarted. The financial burden of a judgment recovered against the co-worker/police officer would often ultimately be borne by the city/indemnifier whose liability has been (in section 22—307 of the Pension Code) expressly limited. We cannot assume that the General Assembly, when enacting the protective provisions now codified in section 1—4—5 of the Municipal Code, intended to thwart the provisions of section 22—307 of the Pension Code. It follows that when enacting the provision of section 1—4—5 of the Municipal Code which, ac-

cording to *Gaca v. City of Chicago* (1952), 411 Ill. 146, was intended to relieve Chicago police officers of indemnity insurance costs, the General Assembly assumed that there would be no occasion for the City to indemnify its officers against liability to co-officers. Stated differently, the General Assembly assumed that the provision now codified as section 22–307 of the Pension Code protected officers from negligence suits initiated by their fellow officers. Legislative enactments can certainly cast light on the legislative intent of earlier enacted statutes (see *Lubezny v. Ball* (1945), 389 Ill. 263, 266), and in this regard section 1–4–5 of the Municipal Code is certainly insightful for interpreting section 22–307 of the Pension Code.

We thus find that, pursuant to section 22–307 of the Pension Code, plaintiff is barred from maintaining the instant negligence action against her fellow officer. Plaintiff cannot do indirectly that which she is forbidden to do directly. That is, she cannot sue her employer, the City of Chicago, nor can she sue her fellow officer for negligence resulting in injury to her while in the performance of her duty. This is not a situation involving double recovery, but one in which a fellow officer is attempting to enhance an award under the Pension Code by bringing suit against a co-worker where the city would likely have to indemnify the co-worker for the amount of the judgment less a setoff for any awards under the Pension Code.

For these reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County dismissing plaintiff's complaint against a fellow officer with prejudice is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*