JOHN MICHAEL BRADLEY, Special Adm'r of the Estate of Greta Bradley, Deceased, Plaintiff, v. SANDOZ NUTRITION CORPORATION *et al.*, Defendants (Sandoz Nutrition Corporation, Third-Party Plaintiff-Appellant; Parkside Human Services, Inc., *et al.*, Third-Party Defendants-Appellees).

First District (6th Division)   No. 1—94—1416

Opinion filed July 14, 1995.

Oppenheimer, Wolff & Donnelly, of Chicago (David C. Bohrer and M. Thaddeus Murphy, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Rudolf G. Schade, Jr., and Sandra E. Kupelian, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This is a wrongful death action which allegedly arises out of the participation of the decedent, Greta Bradley, in a medically supervised weight management program. John Bradley (plaintiff), administrator of the decedent's estate, filed a fourth amended complaint (complaint) seeking damages from Sandoz Nutrition Corporation (Sandoz), the manufacturer of the nutritional supplement prescribed during the program, and Dr. Ralph Napolitano, the decedent's treating physician. Seeking contribution, Sandoz filed a cross-claim against Dr. Napolitano and a third-party complaint against Parkside Human Services, Inc., and Lutheran General Hospital (collectively referred to as Lutheran General), the health services corporations responsible for the operation of the program and the health and welfare of the participants. The trial court dismissed the third-party complaint as untimely, and this appeal was taken pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). The issue on appeal is whether Sandoz timely filed its third-party complaint for contribution against Lutheran General.

The original complaint in this wrongful death action was filed on November 15, 1990, naming Sandoz and Lutheran General as party defendants. At that time, plaintiff's sole legal theory was that Sandoz and Lutheran General were strictly liable in tort based upon their alleged manufacture and distribution of the Optifast weight management program and nutritional supplement. The complaint was amended twice in response to motions to strike filed by Sandoz. As of the third amended complaint, filed on February 7, 1991, no new parties were added and plaintiff's legal theory was still limited to strict liability.

Plaintiff was granted leave to file a fourth amended complaint on May 23, 1991, which Sandoz answered on July 1, 1991. The fourth amended complaint added both a new defendant, Dr. Ralph Napolitano, and a new legal theory, medical malpractice. Plaintiff alleged that Dr. Napolitano committed malpractice by allowing the decedent to lose weight at a rapid rate after two electrocardiographic record-

ings documented QT interval prolongations. Plaintiff's complaint was supported by a letter from plaintiff's consultant identifying specific electrocardiogram (EKG) tests and related records. This was the first reference made by the plaintiff to Dr. Napolitano's negligent monitoring of the decedent's EKG readings as an alleged cause of the decedent's injuries.

On July 30, 1991, Sandoz brought a motion to compel the plaintiff to comply with Sandoz's previously filed interrogatories and requests for production. (Written discovery requests were originally filed on January 4, 1991.) The motion was granted on August 6, 1991. On September 4, 1991, the plaintiff produced the decedent's medical records including the EKG readings referenced in the fourth amended complaint.

Sandoz then reviewed the records with its consulting experts, and as a result, concluded that both Dr. Napolitano and Lutheran General failed to properly interpret the decedent's EKG tests and consequently allowed the decedent to lose too much weight for too long a period of time without receiving sufficient caloric intake.

On June 4, 1993, Sandoz was granted leave and filed a cross-claim for contribution against Dr. Napolitano and a third-party complaint for contribution against Lutheran General. (Lutheran General was dismissed without prejudice from the plaintiff's case in chief on November 23, 1992, based upon Lutheran General's certification of Sandoz as the manufacturer of the product identified by the plaintiff in his complaint.) Lutheran General moved to dismiss Sandoz's third-party complaint as time-barred under section 13—212 of the Illinois Code of Civil Procedure (735 ILCS 5/13—212 (West 1992)), which the trial court granted. Section 13—212 provides in relevant part:

"[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

Sandoz first contends that the medical malpractice statute is not applicable to its third-party complaint and that its complaint was timely pursuant to section 5 of the Contribution Act (740 ILCS 100/5

(West 1992)) and the interpretation of the statutory language in *Laue v. Leifheit* (1984), 105 Ill. 2d 191, 196, 473 N.E.2d 939. Section 5 provides:

> "A cause of action for contribution among joint tortfeasors may be asserted by a separate action before or after payment, by counterclaim or by third-party complaint in a pending action." (740 ILCS 100/5 (West 1992).)

In *Laue*, the court interpreted section 5 as providing that a contribution claim may be asserted by a "separate action before or after payment" where no suit is pending, but when there is an action pending, the contribution claim must be asserted by counterclaim or third-party claim in that action. *Laue*, 105 Ill. 2d at 196.

Sandoz argues that the filing of its third-party complaint was timely under the principles set forth in *Laue* because it filed its contribution claim during the pendency of the underlying action. However, *Laue* established a procedural requirement that an action for contribution must be filed during the pendency of the underlying direct action. The decision does not hold that all actions for contribution brought within the time that an underlying suit is pending are timely. *Hayes v. Mercy Hospital & Medical Center* (1990), 136 Ill. 2d 450, 460, 557 N.E.2d 873.

In *Hayes*, the court applied the four-year repose portion of section 13—212(a) to determine whether a third-party claim for contribution was timely filed. The *Hayes* court stated:

> "The action for contribution apportions the damages among the parties responsible for the original plaintiff's injury, and the contributor is obligated for the damages directly created by the contributor's negligent actions. The third-party plaintiff, therefore, is seeking from the third-party defendant those damages proximately caused by the negligent acts of the third-party defendant which the third-party plaintiff may be obligated to pay in the underlying suit." (*Hayes*, 136 Ill. 2d at 457.)

The *Hayes* court thus concluded that an action for contribution was an "action for damages" under the medical malpractice statute of repose. (*Hayes*, 136 Ill. 2d at 457. See also *Vogt v. Corbett* (1990), 138 Ill. 2d 482, 563 N.E.2d 447; *Clardy v. Rapistan Division of Lear Siegler, Inc.* (1993), 254 Ill. App. 3d 1066, 627 N.E.2d 249.) Also noted by the *Hayes* court was the fact that the enactment of the medical malpractice statute was a response by the General Assembly to a perceived medical malpractice insurance crisis. Because a suit for contribution against an insured for damages arising out of patient care exposes insurance companies to the same liability as in the underlying action, the term "or otherwise" in the medical malprac-

tice statute includes actions for contribution against a physician for injuries arising out of patient care.

We do not find any merit in Sandoz's attempt to distinguish *Hayes* because it involved the repose portion of the statute. The reasoning in *Hayes* applies equally to the limitations section. Accordingly, Sandoz's third-party claim for contribution is an action for damages against a physician and hospital. Therefore, the applicable statute of limitations is the two-year time period found in section 13—212(a).

Having determined the statute of limitations applicable to the contribution claim, we next address the question of when the statute began to run. Sandoz contends that assuming that the medical malpractice statute of limitations is applicable to its third-party complaint, it should be able to utilize the discovery rule which is set forth in the statute. Sandoz argues that the statute did not begin to run until September 4, 1991, the date that Sandoz first received the decedent's medical records because until that date it did not possess sufficient information to be put on notice that Lutheran General committed an act or omission which contributed to plaintiff's injuries.

In support of its argument, Sandoz relies on *Carlson v. Moline Board of Education, School District No. 40* (1992), 231 Ill. App. 3d 493, 596 N.E.2d 176. The court in *Carlson* stated that in the majority of cases, knowledge of the existence of the underlying suit is sufficient notice to the defendant/third-party plaintiff to satisfy the statutory requirement that the person bringing the action "knew or should reasonably have known of the act or omission giving rise to the contribution action." (*Carlson*, 231 Ill. App. 3d at 498.) The court also noted:

> "It is conceivable, however, that in a particular case a defendant may be justifiably unaware at the commencement of the underlying suit that the acts or omissions of a third party contributed to the plaintiff's injury. In such a case the limitations period would not begin to run until a third-party plaintiff knew or reasonably should have known of the acts or omissions of the third-party defendant." *Carlson*, 231 Ill. App. 3d at 498-99.

However, in the instant case, the trial court concluded and Lutheran General now argues that the statute began to run on November 15, 1990, when the complaint for the underlying action was filed. Lutheran General reasons that a contribution claim accrues: (1) at the time that the party seeking contribution is sued in the underlying direct action, giving him notice of the nature and the potential amount of the obligation necessitating the contribution action, or (2) when there is no underlying action pending, and the party seeking contribution makes payment or undertakes an obligation to

make payment to the injured or original complainant. See *Clardy*, 254 Ill. App. 3d 1066, 627 N.E.2d 249; *Caballero v. Rockford Punch Press & Manufacturing Co.* (1993), 244 Ill. App. 3d 333, 614 N.E.2d 362; *Rummel v. Yazoo Manufacturing Co.* (1991), 222 Ill. App. 3d 526, 583 N.E.2d 19.

Relying on *Cornett v. Gromann Service Co.-Retail*, Lutheran General argues that the discovery rule is not available to Sandoz.

> "The discovery rule is designed to allow an injured party sufficient time in which to file suit, once the cause of action has been discovered. *** The discovery rule confers rights upon the plaintiff which cannot be asserted by the third-party plaintiff. It is not a device which can be raised by the third-party plaintiff in an effort to toll the statute of repose." *Cornett v. Gromann Service Co.-Retail* (1992), 227 Ill. App. 3d 148, 152, 590 N.E.2d 1013.

■ Without addressing the issue of whether the discovery rule was available to Sandoz, its argument that it did not have notice of acts or omissions of Lutheran General which contributed to the plaintiff's injuries is without merit. Not only was Lutheran General a defendant in the initial complaint filed on November 15, 1990, but the plaintiff's fourth amended complaint added a medical malpractice count against the physician, Dr. Napolitano. The fourth amended complaint was filed on May 23, 1991. The allegations against Dr. Napolitano were that he failed to properly oversee the decedent's medical condition while participating in the Optifast diet, allowed the decedent to lose weight too rapidly, and allowed the decedent to lose weight at a rapid rate after two electrocardiographic recordings documented QT interval prolongations. The allegations against Lutheran General were that it manufactured, distributed and sold the Optifast Program in a condition so that death was likely to occur when it was used for weight loss, it did not contain adequate warnings that the program might result in death, it was likely to cause cardiac arrhythmias, and use of the program resulted in too rapid weight loss. Thus, even if Sandoz did not know at the time of the original complaint that it had an action for contribution based on medical malpractice, Sandoz certainly received notice of the acts or omissions of Lutheran General when the plaintiff's fourth amended complaint was filed on May 23, 1991. Sandoz, however, did not file its third-party complaint for contribution until June 2, 1993.

Sandoz next argues that when it knew or should have known of the existence of a third-party claim is a question of fact. Sandoz cites *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, in support of the proposition that when a party knew or should have known of both an injury and its probable wrongful cause

is one of fact, unless the facts are undisputed, and only one conclusion may be drawn from them. In the instant case, the only conclusion that can be drawn from the facts is that, even if Sandoz did not receive notice that it had a claim for contribution at the time of the original complaint, it did receive notice based on the allegations of the fourth amended complaint when it was filed in May 1991.

■ Sandoz's final argument is that to the extent that plaintiff's action was brought on behalf of the decedent's three minor children, the statute of limitations has not yet run. Therefore, its third-party claim for contribution is timely. Sandoz relies on *Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 588 N.E.2d 1111, which applied the eight-year repose period for minors (735 ILCS 5/13—212(b) (West 1992)) to the third-party plaintiff's claim for contribution. The *Antunes* court reasoned that to hold otherwise could lead to the unjust result of barring a defendant from filing a third-party complaint for contribution before he was even named as a party in the underlying action. (*Antunes*, 146 Ill. 2d at 488.) However, these are not the facts in the instant case. In this case, John Michael Bradley, as special administrator, filed the suit on behalf of the decedent's children in the underlying action. Thus Sandoz had notice that it was named as a party when the suit was filed on November 15, 1990. Accordingly, the order of the circuit court is affirmed.

Affirmed.

EGAN and ZWICK, JJ., concur.