KENNETH FLIGELMAN, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division) No. 1—94—2801

Opinion filed October 13, 1995.—Rehearing denied November 7, 1995.

Joseph V. Roddy, of Chicago (James L. Byrne, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal,

Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Kenneth Fligelman, a Chicago police officer, sued the City of Chicago (City) for negligently causing injuries he suffered when part of a City bridge fell on him. The trial court granted the City's motion for summary judgment. In an earlier appeal this court found that it lacked jurisdiction because the trial court granted plaintiff leave to amend his complaint. (*Fligelman v. City of Chicago* (1994), 264 Ill. App. 3d 1035, 637 N.E.2d 1195.) The trial court subsequently entered an order again granting the City summary judgment, but without giving plaintiff leave to amend the complaint. We now have jurisdiction to consider the merits of the appeal. *Colvin v. Hobart Brothers* (1993), 156 Ill. 2d 166, 170, 620 N.E.2d 375.

Plaintiff worked the evening shift, from 3 p.m. to 11:30 p.m., on June 5, 1988. Around 10 p.m. he drove to police headquarters on State Street near Roosevelt Road, to complete some reports. He parked in the parking lot for the police headquarters. As he walked through the lot he passed under the Roosevelt Road bridge. A chunk of concrete fell from the bridge and struck him, fracturing his arm. Plaintiff missed almost five months of work due to his injuries.

In the complaint, plaintiff alleged that the City negligently maintained the bridge, which was in an unreasonably dangerous condition. The City admitted that the bridge was in poor shape, with cracked and deteriorating concrete, but the City argued that the Illinois Pension Code (Code) (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 1—101 *et seq.* (now 40 ILCS 5/1—101 *et seq.* (West 1994))) barred the common law action.

■ In the Pension Code, the legislature intended to motivate municipalities to provide their employees with protections available to other workers under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). (*Mitsuuchi v. City of Chicago* (1988), 125 Ill. 2d 489, 494, 532 N.E.2d 830.) The Code permits cities to enact ordinances providing for payment of medical expenses and an allowance to police officers injured in the line of duty. (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 22—306 (now 40 ILCS 5/22—306 (West 1994)).) Plaintiff concedes that the City enacted such an ordinance. (See *Mitsuuchi*, 125 Ill. 2d at 492.) To encourage cities to enact these ordinances, the legislature gave them the same protections available to employers under the Workers' Compensation Act. In section 22—307 of the Code, the legislature said:

"Whenever any city or village enacts an ordinance pursuant to

[section 22—306], no common law or statutory right to recover damages against such city or village for injury or death sustained by any policeman or fireman while engaged in the line of his duty as such policeman or fireman, other than the payment of the allowances of money and of the medical care and hospital treatment provided in such ordinance, shall be available to any policeman or fireman who is covered by the provisions of such ordinance ***." Ill. Rev. Stat. 1987, ch. 108$^{1}$/$_2$, par. 22—307 (now 40 ILCS 5/22—307 (West 1994)).

■ Fligelman contends that section 22—307 does not apply here because he was not "engaged in the line of his duty," within the meaning of the Code, while he walked across the parking lot to headquarters. The Workers' Compensation Act guides our interpretation of the Code. (*O'Donnell v. City of Chicago* (1984), 126 Ill. App. 3d 548, 552, 467 N.E.2d 971.) Cases under the Act establish that an employee is "engaged in the line of his duty" (820 ILCS 305/5(a) (West 1994)) when he is injured if the injury arises both out of, and in the course of, the employment. *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 57, 541 N.E.2d 665.

An injury arises in the course of employment if the time, place and circumstances of the injury show that the employee was engaged in the line of his duty when injured. (*County of Cook v. Industrial Comm'n* (1988), 165 Ill. App. 3d 1005, 1007, 520 N.E.2d 896.) The parties agree that the injury here occurred in the course of plaintiff's employment.

The injury arises out of the employment if a risk incidental to the employment led to the injury. (*County of Cook*, 165 Ill. App. 3d at 1009.)

"[A]n injury arises out of the employment if the conditions or nature of the employment increase the employee's risk of harm beyond that to which the general public is exposed. [Citation.] *** [T]he fact that an employee was present at the place of his injury because of his employment duties does not by itself establish that the injury arose out of the employment." *Sangster v. Keller* (1992), 226 Ill. App. 3d 535, 539, 589 N.E.2d 940.

In general, "accidental injuries received on parking lots maintained by employers for the use of their employees are received in the course of and arise out of their employment." (*Flynn v. Rathnau* (1990), 202 Ill. App. 3d 482, 483, 559 N.E.2d 1102.) Our supreme court described some exceptions:

"[N]ot all parking lot injuries are compensable as 'arising out of' employment. *** A personal deviation by an employee (*e.g.*, spending from 1$^{1}$/$_2$ to two hours in a tavern) can break the necessary causal link between the injury and the employment. [Citation.]

Nor is an injury compensable if it resulted from risk personal to the employee rather than incidental to the employment. [Citations.] In these cases, the court denied recovery where the injury claimant sustained on the employer's premises did not occur as a result of the condition of those premises. However, where the claimant's injury was sustained as a result of the condition of the employer's premises, this court has consistently approved an award of compensation." *Archer Daniels Midland Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 210, 215-16, 437 N.E.2d 609.

Thus, appellate courts have held that workers' compensation covers parking lot accidents caused in part by ice or other slippery substances on the lot (*Hiram Walker & Sons, Inc. v. Industrial Comm'n* (1968), 41 Ill. 2d 429, 244 N.E.2d 179; *American Electric Cordsets v. Industrial Comm'n* (1990), 198 Ill. App. 3d 87, 555 N.E.2d 823), the slope of the lot (*Material Service Corp., Division of General Dynamics v. Industrial Comm'n* (1973), 53 Ill. 2d 429, 434, 292 N.E.2d 367), the layout of the lot (*Hammel v. Industrial Comm'n* (1993), 253 Ill. App. 3d 900, 903, 626 N.E.2d 234), traffic congestion in the lot (*Chmelik v. Vana* (1964), 31 Ill. 2d 272, 280, 201 N.E.2d 434), or a criminal assault in the lot (*County of Cook*, 165 Ill. App. 3d at 1010). We find that the dilapidated bridge over the parking lot similarly created a hazardous condition in the work premises, and therefore the injury arose out of the employment.

Plaintiff contends that by so holding, we implicitly adopt the positional risk doctrine expressly rejected by our supreme court in *Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542, 552-53, 578 N.E.2d 921. One commentator explained that an employee's risks fall into three basic categories: risks directly associated with employment, like excavations caving in or machinery gears catching fingers and limbs; risks personal to the employee, like assaults by personal enemies who are not co-workers or diseases not contracted at work; and "neutral risks," which are distinctly related to neither the employment nor the employee, like lightning or stray bullets which strike the employee at work. (1 A. Larson, Law of Workmen's Compensation § 7 (1991).) Employment risks are covered by workers' compensation under all theories, and no theories support recovery for risks personal to the employee. The theories, and cases from various jurisdictions, differ only in treatment of neutral risks.

■ Under the positional risk doctrine, an injury arises out of employment if it " 'would not have occurred but for the fact that the conditions or obligations of the employment placed claimant in the position where he was injured by a neutral force ***.' " (*Brady*, 143 Ill. 2d at 552, quoting Larson, *The Positional-Risk Doctrine in*

*Workmen's Compensation*, 1973 Duke L.J. 761, 761.) Our supreme court has rejected the doctrine in favor of the increased risk theory, under which workers' compensation covers an injury if the conditions of employment subjected the employee to a risk of injury increased beyond the risk which the general public faces. *Campbell "66" Express, Inc. v. Industrial Comm'n* (1980), 83 Ill. 2d 353, 355, 415 N.E.2d 1043.

In *County of Cook* a stranger approached a court employee while she sat in her car in the court's parking lot. The stranger demanded money, then stabbed the employee repeatedly. The Industrial Commission awarded the employee workers' compensation, finding that her employment exposed her to an increased risk of assault. (*County of Cook*, 165 Ill. App. 3d at 1007.) The appellate court reasoned:

> "[W]here an employee is likely to encounter persons who are liable to attack the employee, the injury may arise out of the employment. \*\*\*
>
> \*\*\* The evidence demonstrate[d] \*\*\* the high likelihood that numerous criminal defendants would be on the premises during the noon hour on that particular day.
>
> The Commission was entitled to find that the environment increased the risk of attack. Petitioner's employment was such that it particularly subjected her to the hazards of attacks by others." *County of Cook*, 165 Ill. App. 3d at 1010.

In *Eisner Food Stores v. Industrial Comm'n* (1965), 33 Ill. 2d 474, 211 N.E.2d 683, a supermarket sign fell off the front of the store onto an employee during a severe windstorm. The Industrial Commission again found that workers' compensation covered the accident, and our supreme court agreed. The court held:

> "The sign wall was a structure peculiar to the building occupied and leased by Eisner. Its design and location made it unusually susceptible to wind damage. No other portion of the building was damaged, nor does the record suggest that other buildings in the shopping center were damaged. The commission was warranted in finding that the presence of the sign wall was an 'exceptional risk and one to which the public generally is not subjected.'" *Eisner*, 33 Ill. 2d at 476.

■ The parking lot for police headquarters here similarly subjected the officers to an increased risk of harm, because the lot sat under a dilapidated bridge. Members of the public could at times expose themselves to the same risk by walking under the bridge, just as the public could use the risky parking lot in *County of Cook* and the sidewalk in *Eisner*. But the public did not need to pass under the bridge as regularly as did those police officers who used the headquarters' parking lot. Just like regular use of the parking lot in

*County of Cook* and the sidewalk in *Eisner* exposed those employees to increased risk, regular use of the parking lot here "would result in a degree of exposure to the common risk beyond that to which the general public would be subjected." *Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 638, 430 N.E.2d 566.

Plaintiff's injuries here

"were incidental to the anticipated normal use of the parking lot provided for the employees by the employer and therefore arose out of and in the course of employment. Plaintiff's exclusive remedy was under the [Pension Code], and his common law negligence action against defendant *** was barred." (*Brooks*, 102 Ill. App. 3d at 639.)

Accordingly, we affirm the order of the trial court granting the City summary judgment.

Affirmed.

COUSINS, P.J., and T. O'BRIEN, J., concur.