(No. 82954.—)

JOHN McNAMEE, Independent Ex'r of the Estate of Steven McNamee, Deceased, Appellee, v. FEDERATED EQUIPMENT & SUPPLY COMPANY, INC., *et al.*, Appellees (The City of Chicago, Appellant).

*Opinion filed February 20, 1998.—Rehearing denied March 30, 1998.*

HEIPLE, J., joined by NICKELS, J., dissenting.

Susan S. Sher and Brian L. Crowe, Corporation Counsel, and Patricia T. Bergeson, Acting Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Anne Berleman Kearney and Timothy W. Joranko, of counsel), for appellant.

Robert P. Sheridan, of Chicago, for appellee John McNamee.

Andrew D. Ellbogen and Alan S. Zelkowitz, of Landau, Omahana & Kopka, Ltd., of Chicago, for appellee Federated Equipment & Supply Co.

James K. Toohey, Jeffrey S. Dunlap and Paul C. Ziebert, of Ross & Hardies, of Chicago, for appellee Deutsche Schlauchboot Fabrik Hans Scheibert GmbH & Co.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

John F. Power III and John P. Fassola, of Power & Cronin, Ltd., of Oakbrook Terrace, for *amicus curiae* Illinois Governmental Association of Pools.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991), this court held that where an injured employee sues a third party who then brings a contribution action against the plaintiff's employer, the third party may obtain contribution from the employer. However, this court limited the contribution to the amount of the employer's liability to the employee under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1996)). *Kotecki* involved a private employer.

In this case, the question presented for review is whether the *Kotecki* cap limits a public employer's third-party contribution liability to the amount of benefits paid to an injured firefighter under article XXII, division 3, of the Illinois Pension Code (40 ILCS 5/22—301 *et seq.* (West 1996)). We hold that it does.

## BACKGROUND

The City of Chicago (the City) moved to dismiss this

issue pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1996)). The motion admits all well-pled facts in the complaint and reasonable inferences drawn therefrom. *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 161 (1997).

The several complaints allege the following pertinent facts. In 1993, the Chicago fire department accepted a "Life Cube" from the product's American distributor, defendant Federated Equipment & Supply Company, Inc. (hereinafter, Federated, also referred to in the record as FEDESCO). The Life Cube's German manufacturer, defendant Deutsche Schlauchtboot Fabrik Hans Scheibert GmbH & Company, K.G. (hereinafter, DSB), had placed a German-language label on the product warning that it was to be used solely to catch jumping or falling persons in emergency rescue situations and was not to be used for exercise, training, or sport jumping.

Federated replaced the Life Cube's German-language warning label with a label, in English, warning that the product was to be used exclusively in emergency rescue situations. Federated also provided the fire department with literature containing various product information, instructions, and warnings. One warning repeated that the Life Cube was intended for use solely in emergency rescue operations in which there were no other means of egress and descent.

On November 22, 1993, Steven McNamee (decedent) was a fire department cadet firefighter at the Chicago Fire Academy. As part of a training exercise, decedent was ordered to jump from a height onto the Life Cube. Decedent jumped, but the product failed to properly support him, causing him to be fatally injured.

Decedent's estate eventually filed a fourth-amended complaint in the circuit court of Cook County against DSB, Federated, and other corporations related to

Federated. The complaint contains survival and wrongful-death counts, alleging negligence and product liability.

Federated then brought a third-party contribution action against the City, pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/5 (West 1996)). DSB brought, *inter alia*, a third-party contribution action against Federated and its related corporations, and the City. We note that DSB and Federated each sought from the City unlimited contribution and, alternatively, contribution limited by the *Kotecki* cap.

The City moved to dismiss the third-party claims for unlimited contribution. See 735 ILCS 5/2—619(a)(9) (West 1996). Relying on section 22—307 of the Pension Code (40 ILCS 5/22—307 (West 1996)) and *Kotecki*, the City argued that its contribution liability was limited to the benefits it had provided decedent's estate pursuant to article XXII, division 3, of the Pension Code (40 ILCS 5/22—301 *et seq.* (West 1996)).

The circuit court denied the City's motion to dismiss, holding that the *Kotecki* cap did not limit the City's third-party contribution liability to decedent's Pension Code benefits. The circuit court subsequently certified the following question for interlocutory review (see 155 Ill. 2d R. 308):

"What limits on liability, if any, are there on the City of Chicago where it is sued as a third party defendant under the Contribution Act [citation], where the City paid and continues to pay benefits pursuant to the Pension Code [citations] to the plaintiff whose decedent was a firefighter."

The appellate court upheld the circuit court. The appellate court held that "there are no limits" to the City's third-party contribution liability when a City employee is injured. 286 Ill. App. 3d 806, 814.

We allowed the City's petition for leave to appeal.

166 Ill. 2d R. 315(a). We subsequently granted the Illinois Municipal League and the Illinois Governmental Association of Pools leave to file *amicus curiae* briefs in support of the City. 155 Ill. 2d R. 345. We now reverse the judgments below and remand the cause to the circuit court for further proceedings.

## DISCUSSION

The City argues that Pension Code section 22—307 limits its contribution liability to DSB and Federated to the medical and death benefits it provided to decedent's estate. The City contends that section 22—307 must be interpreted in accord with this court's interpretation of the Workers' Compensation Act in *Kotecki*. Thus, to better understand the certified question for review, we initially discuss the Workers' Compensation Act in relation to the *Kotecki* decision.

### Workers' Compensation Act

Section 5(a) of the Workers' Compensation Act provides in pertinent part:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act *** or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 1996).

Section 11 of the Act further provides in pertinent part: "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer *** for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act ***." 820 ILCS 305/11 (West 1996).

This court has explained the purposes of the Workers' Compensation Act as follows:

" 'Pursuant to the statutory scheme implemented by the Act, the employee gave up his common law rights to sue his employer in tort, but recovery for injuries arising out of and in the course of his employment became automatic without regard to any fault on his part. The employer, who gave up the right to plead the numerous common law defenses, was compelled to pay, but his liability became fixed under a strict and comprehensive statutory scheme, and was not subjected to the sympathies of jurors whose compassion for fellow employees often led to high recovery. [Citation.] This trade-off between employer and employee promoted the fundamental purpose of the Act, which was to afford protection to employees by providing them with prompt and equitable compensation for their injuries.' " *Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 494 (1988), quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978); see M. Bilandic, *Workers' Compensation, Strict Liability, and Contribution in Illinois: A Century of Legal Progress?*, 83 Ill. B.J. 292 (1995); 1 T. Angerstein, Illinois Workmen's Compensation §§ 8, 9, 14, 15, 31 (rev. ed. 1952); 2 T. Angerstein, Illinois Workmen's Compensation § 951 (rev. ed. 1952).

We note that section 5(b) of the Act essentially provides that:

"an employee who has received compensation under the Act is required to reimburse the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries. The obligation is to reimburse for the full amount of benefits paid or payable by the employer and a lien in favor of the employer is provided upon any recovery by the employee for the amount of the benefits. [820 ILCS 305/5(b) (West 1996).] The employee is entitled to retain only that portion of a recovery from the tortfeasor which exceeds the benefits received under the Act from the employer." *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1, 7 (1970).

Where an injured employee sues a third party, the plaintiff's employer and the third party have competing interests. Under the Workers' Compensation Act, the employer does not want to pay more than his or her

workers' compensation liability. Indeed, the large majority of American jurisdictions do not allow the third party to seek contribution from the employer. *Kotecki*, 146 Ill. 2d at 163; accord 7 A. Larson & L. Larson, Larson's Workers' Compensation Laws § 76.20, at 14—730 (1997). However, under the Contribution Act, the third party has the right to contribution from the employer regardless of the Workers' Compensation Act. *Kotecki*, 146 Ill. 2d at 158-60 (explaining *Doyle v. Rhodes*, 101 Ill. 2d 1 (1984)).

In *Kotecki*, this court balanced these competing interests by holding that the third party may obtain contribution from the employer, but limited to the employer's workers' compensation liability. *Kotecki*, 146 Ill. 2d at 164-65. With this interpretation of the Workers' Compensation Act in mind, we now turn to the Pension Code.

### Pension Code

Article XXII, division 3, of the Pension Code authorizes a municipality to enact an ordinance providing death and medical benefits for police officers and firefighters who are injured or killed while performing their duties. 40 ILCS 5/22—301 (death), 22—306 (medical) (West 1996). The City has enacted such an ordinance pursuant to this division of the Pension Code. See Chicago Municipal Code § 3—8—010 *et seq.* (1990). Indeed, we note that, with an exception not relevant to this case, firefighters in cities with populations exceeding 200,000 are expressly exempted from the Workers' Compensation Act. 820 ILCS 305/1(b)(1) (West 1996). We also note that these payments are in addition to payments firefighters or their survivors would receive from the Firemen's Annuity and Benefit Fund when a firefighter is disabled or dies while performing his or her duties. See 40 ILCS 5/6—101 *et seq.* (West 1996).

Pension Code section 22—307 limits the liability of a

municipality that enacts an ordinance pursuant to article XXII, division 3:

> "Whenever any city or village enacts an ordinance pursuant to this Division, no common law or statutory right to recover damages against such city or village for injury or death sustained by any policeman or fireman while engaged in the line of his duty as such policeman or fireman, other than the payment of the allowances of money and of the medical care and hospital treatment provided in such ordinance, shall be available to any policeman or fireman who is covered by the provisions of such ordinance *** or to anyone who would otherwise be entitled to recover damages for such injury or death." 40 ILCS 5/22—307 (West 1996).

As is readily apparent, the language of Pension Code section 22—307 is nearly identical to section 5(a) of the Workers' Compensation Act. Also, Pension Code section 22—308, tracking the language of section 5(b) of the Workers' Compensation Act, requires a police officer or firefighter who has received death benefits under Pension Code section 22—301 to reimburse the municipality from any recovery the employee's estate receives from a third party. The section also creates a corresponding lien in favor of the municipality. Compare 40 ILCS 5/22—308 (West 1996) with 820 ILCS 305/5(b) (West 1996).

### *Kotecki*

We agree with the City that Pension Code section 22—307 must be interpreted in accord with the *Kotecki* court's interpretation of the Workers' Compensation Act. The cardinal rule of interpreting statutes, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature. In determining legislative intent, a court first should consider the statutory language. Moreover, a court will avoid an interpretation of a statute that would render any portion of it meaningless or void. Also, a court

presumes that the legislature, in enacting a statute, did not intend absurdity, inconvenience, or injustice. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194-95 (1992).

"Reference to another statute by analogy is also a common method of interpretation and has been relied upon by this court on many occasions." *Waste Management of Illinois, Inc. v. Illinois Pollution Control Board*, 145 Ill. 2d 345, 351 (1991). As a noted authority has explained:

> "On the basis of analogy the interpretation of a doubtful statute may be influenced by language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships. By referring to other similar legislation, a court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law." 2B N. Singer, Sutherland on Statutory Construction § 53.03, at 233 (5th ed. 1992).

Illinois courts have long recognized that the system for the compensation of injured police officers and firefighters under article XXII, division 3, of the Pension Code is analogous to that established by the Workers' Compensation Act. *Mitsuuchi*, 125 Ill. 2d at 493-94; accord *Sweeney v. City of Chicago*, 131 Ill. App. 2d 537, 542 (1971). In the Pension Code, the legislature intended to motivate municipalities to provide police officers and firefighters with protections available to private employees under the Workers' Compensation Act. To encourage municipalities to enact ordinances pursuant to the Code, the legislature gave them the same protections available to employers under the Workers' Compensation Act. *Fligelman v. City of Chicago*, 275 Ill. App. 3d 1089, 1091 (1995). Because of the similarity of language in the Pension Code and the Workers' Compensation Act, and

because of the analogous compensation systems established in both statutes, the standards developed under the Act apply to the Code (*O'Donnell v. City of Chicago*, 126 Ill. App. 3d 548, 552 (1984)) and guide courts in interpreting the Code (*Fligelman*, 275 Ill. App. 3d at 1092).

The appellate court did not consider these holdings to be relevant to the present case. 286 Ill. App. 3d at 810. However, we agree with the City that, given the significant similarities between the Workers' Compensation Act and the Pension Code, an accommodation between the Pension Code and the Contribution Act should be made similar to that made between the Workers' Compensation Act and the Contribution Act in *Kotecki*. See *Kotecki*, 146 Ill. 2d at 165. As noted, Pension Code section 22—307 and section 5(a) of the Workers' Compensation Act use almost identical language to limit employers' exposure to suits. The plain language of section 22—307 limits the City's liability to any plaintiff seeking to recover damages for a firefighter's injury or death. The City's liability is limited to "the payment of the allowances of money and of the medical care and hospital treatment provided in [the City's pension] ordinance." 40 ILCS 5/22—307 (West 1996).

In addition to the largely identical language in these sections of the Pension Code and the Workers' Compensation Act, the purpose and operation of both statutes are identical. Both statutory schemes provide compensation on a no-fault basis to employees injured in the scope of their duties. In return, both statutory schemes sharply limit rights of action. And both statutes provide the employer with a statutory lien on a portion of the damages that an employee might obtain from a third party. So as the employer in *Kotecki* was entitled to the liability limitation that the Workers' Compensation Act provided as a trade-off for the no-fault compensation

scheme, the City is entitled to the Pension Code's liability limitation because it participates in the no-fault compensation scheme under article XXII, division 3, of the Pension Code.

The appellate court stated several reasons to avoid this natural conclusion. These reasons are unpersuasive.

The appellate court noted that the liability limitation of Pension Code section 22—307 applies to injured police officers and firefighters and, among others, " 'anyone who would otherwise be entitled to recover damages for such injury' " or death. 286 Ill. App. 3d at 811, quoting 40 ILCS 5/22—307 (West 1996). The court concluded that this provision does not include third-party plaintiffs seeking contribution for two reasons.

First, citing the Contribution Act, the appellate court reasoned that a third-party contribution plaintiff does not "recover damages for such injury," but rather is entitled to an apportionment of damages based on his or her *pro rata* share of the common liability. 286 Ill. App. 3d at 811, citing 740 ILCS 100/2(b) (West 1996). However, this court has held that actions for "damages" include actions for contribution. *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 457 (1990); accord *Bradley v. Sandoz Nutrition Corp.*, 274 Ill. App. 3d 381, ·384 (1995).

The appellate court also noted that the current version of the Pension Code (1963 Ill. Laws 161) predates the availability of contribution among tortfeasors in Illinois (see *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1977)). According to the appellate court, since contribution was not recognized here when the legislature enacted the Pension Code, the legislature could not have intended to limit to any extent a third party's right of contribution against the City. 286 Ill. App. 3d at 811.

The appellate court's interpretation of Pension Code section 22—307 allows the City to be liable in contribution for the full amount of its percentage of fault. This interpretation essentially nullifies that section's plain language, which establishes limits on the City's liability. However, where there is an alleged conflict between two statutes, a court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. *Lilly Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993); accord *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 279-80 (1994).

The appellate court's conclusion that the liability limitation of Pension Code section 22—307 does not apply to third-party contribution plaintiffs contravenes this court's reasoning in *Kotecki*. In *Kotecki*, this court concluded that the liability limitation of section 5(a) of the Workers' Compensation Act, which applies to "any one otherwise entitled to recover damages for such injury" (820 ILCS 305/5(a) (West 1996)), includes third-party contribution plaintiffs. Also, the *Kotecki* court found accommodation between the Workers' Compensation Act and the Contribution Act, notwithstanding the fact that the Workers' Compensation Act, like the Pension Code, predates the adoption of contribution among tortfeasors (1951 Ill. Laws 1060).

The appellate court next found "crucial differences" between the plain language of the Pension Code and the Workers' Compensation Act. To the appellate court, these differences were sufficient to preclude an application of *Kotecki* to article XXII, division 3, of the Pension Code.

The appellate court first noted that the Workers' Compensation Act contains section 11, which provides that "[t]he compensation herein provided *** shall be the measure of the responsibility of any employer." 820

ILCS 305/11 (West 1996). The court then stated that the Pension Code does not contain similar language. Therefore, the court concluded, the liability of a municipal employer was not intended to be limited to the compensation provided for in article XXII, division 3, of the Pension Code. 286 Ill. App. 3d at 812.

The appellate court's dissection of the Workers' Compensation Act was erroneous. Generally, a court determines the legislative intent in enacting a statute by examining the entire statute and by construing each material part or section of the legislation together, and not each part or section alone. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989); *Huckaba v. Cox*, 14 Ill. 2d 126, 131 (1958). Specifically, in construing the Workers' Compensation Act, all portions thereof must be read as a whole, and in such a manner as to give them the practical and liberal interpretation intended by the legislature. *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 444-45 (1976), quoting *Vaught v. Industrial Comm'n*, 52 Ill. 2d 158, 165 (1972).

The plain language of section 5(a) of the Workers' Compensation Act clearly includes the purpose and meaning of section 11. As previously quoted, section 5(a) includes the phrase: "other than the compensation herein provided." This obviously means that "[t]he compensation herein provided *** shall be the measure" of the employer's responsibility. 820 ILCS 305/5(a), 11 (West 1996). The two phrases say the same thing. Section 5(a) limits an employer's responsibility to the requirements of the Act exactly as does section 11. Based on this plain language, it is quite settled that the meanings of these two provisions are closely related. In construing any one of them, they must be considered together. See 2 T. Angerstein, Illinois Workmen's Compensation §§ 952, 1831, 1832 (rev. ed. 1952).

We note that this court and commentators long have

spoken of sections 5(a) and 11 of the Workers' Compensation Act as operating together to limit the employer's liability to that provided by the Act. See, *e.g.*, *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462-63 (1990); W.C. Ropiequet & T. Keefe, *Coverage of the Illinois Workmen's Compensation Act*, 1957 U. Ill. L.F. 169, 183-84. Courts have also described section 5(a) alone as *both* (1) providing a substitute for an employee's previous rights of action against an employer and extending the liabilities of the employer, *and* (2) fixing limits to the amount to be recovered and covering the whole ground of the employer's liabilities. *Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15, 18 (1969); see also *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 152 (1996); *Bloemer v. Square D Co.*, 8 Ill. App. 3d 371, 372 (1972).

The appellate court also misapprehended the plain language of Pension Code section 22—307. Sections 5(a) and 11 of the Workers' Compensation Act have a clear analogue in Pension Code section 22—307. As previously quoted, section 22—307 includes the phrase: "other than the payment of the allowances of money and of the medical care and hospital treatment provided in [the City's pension] ordinance." 40 ILCS 5/22—307 (West 1996). By this language, as with section 5(a) of the Workers' Compensation Act, section 22—307 provides a substitute for a police officer's or a firefighter's previous rights of action against a municipality and extends the municipality's liabilities, but also limits the amount to be recovered under article XXII, division 3, and covers the whole ground of the municipality's liabilities under that article.

The appellate court also concluded that a municipality's lien rights under the Pension Code were so different from those under section 5(b) of the Workers' Compensation Act as to preclude the application of *Kotecki* to article XXII, division 3, of the Pension Code. The appel-

late court noted that, under Pension Code section 308, the City's lien against a firefighter's award from a third party is limited to the amount of medical and death benefits that the City paid out "previous to such judgment or settlement." 40 ILCS 5/22—308 (West 1996). The appellate court stated that the City's lien would not include any money paid or payable after the judgment or settlement, or payments from the Firemen's Annuity and Benefit Fund (see 40 ILCS 5/6—101 *et seq.* (West 1996)).

The appellate court surmised that a private employer's liability under the Workers' Compensation Act could be much broader than a municipality's limited lien under Pension Code section 22—308. The court viewed *Kotecki* as balancing the competing interests of the employer, as a participant in a no-fault system of recovery, and the third party, who seeks to pay no more than its established fault. To the appellate court, the City's lien under section 22—308 does not reflect the fairest and most equitable balance between the competing interests of the tortfeasors. Since the City's lien does not reflect the full measure of the City's liability, then the rationale of *Kotecki* does not apply to this case. 286 Ill. App. 3d at 812-13.

We conclude that the difference in the lien rights of section 5(b) of the Workers' Compensation Act and Pension Code section 22—308 does not preclude an application of *Kotecki* to article XXII, division 3, of the Pension Code. We agree with the City that *Kotecki* was not based on the reasonableness of that employer's lien, or the determination of any particular amount of compensation. Rather, this court looked to the underlying purpose of the workers' compensation scheme, which is in part to limit an employer's liability to what it is already paying in benefits under a no-fault system. That this purpose also applies to article XXII, division 3, of the Pension

Code "can hardly be doubted." *Mitsuuchi*, 125 Ill. 2d at 493. *Kotecki* reconciled this legislative intent to limit an employer's liability with a third party's right to contribution. Likewise, it can hardly be doubted that this reconciliation should apply to article XXII, division 3, of the Pension Code and the Contribution Act.

## CONCLUSION

In sum, we answer the certified question as follows. The benefit scheme in article XXII, division 3, of the Pension Code operates similarly to the workers' compensation scheme:

> "In the ordinary case, when an employee sustains injuries in the course of employment, the employer pays workers' compensation benefits to the employee regardless of fault. If the employee thereafter successfully sues a third-party tortfeasor for his injuries, the employer has the right to recover workers' compensation payments it made to the employee from the award the employee receives from the third-party tortfeasor. If the third party brings a contribution action against the employer, the amount of contribution the employer must pay is limited to 'an amount no greater than' its workers' compensation liability. (*Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 157.) Ultimately, a negligent employer pays out no more than the amount it is obligated to pay under the workers' compensation statute." *Schrock v. Shoemaker*, 159 Ill. 2d 533, 542-43 (1994).

The statutory limit of the City's liability is the "payment of the allowances of money and of the medical care and hospital treatment provided in [the City's pension] ordinance" enacted pursuant to article XXII, division 3, of the Pension Code (40 ILCS 5/22—307 (West 1996)). This is the amount that the City can be reimbursed from a firefighter's award from a third party, and it is the amount of the City's corresponding lien. 40 ILCS 5/22—308 (West 1996).

For the foregoing reasons, the judgments of the appellate court and the circuit court of Cook County are

reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE HEIPLE, dissenting:

At issue in this case is the extent of the City of Chicago's liability when it is sued as a third-party defendant in a contribution action related to a wrongful death suit brought on behalf of a firefighter killed in the line of duty. The majority opinion holds that the City of Chicago's liability in contribution is limited to the amount of death and medical benefits it has paid to the firefighter's survivors under the Illinois Pension Code (40 ILCS 5/22—301 *et seq.* (West 1996)) and essentially extends the holding of *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991), which limited a private employer's liability in contribution to the amount of the employer's liability to its employee under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1996)). The majority reasons that the language and purpose of the Pension Code is so similar to that of the Workers' Compensation Act that, logically, the *Kotecki* rule must apply to both. 181 Ill. 2d at 425. The majority's opinion has a certain superficial appeal—there are similarities in the statutes. The majority's rationale, however, is flawed in several respects, not the least of which is that the majority confuses the nature of an analogy—an analogy being an interpretative aid and *not* a substitute for legislation.

The essence of the dilemma is this. If the City of Chicago (the City) is liable in contribution, the City might be forced to pay its employee, albeit indirectly through a third-party tortfeasor, an amount in excess of its liability under the Pension Code. If the City is not liable in contribution, a third-party stranger to the employee-employer relationship is made to bear the

burden of a full common law judgment despite the possibility of greater fault on the part of the City. Thus, the third-party tortfeasor would in effect be subsidizing the City's pension system in a proportion greater than its own fault.

The City has an obvious interest in limiting its liability to the death and medical benefits required under the Pension Code. The employee has an interest in receiving full benefits under the Pension Code and, to the extent that a third party caused him injury, a common law recovery from that third party. In contrast, the third party's interest is identical to that of any other joint tortfeasor, *i.e.*, to limit its liability to no more than established fault. The majority's answer to this quandary is to allow the third party to seek contribution from the City, but only to the extent of the death and medical benefits paid to the firefighter under the Pension Code. This rule, however, works a real inequity on the third party to the extent that it is forced to bear the burden of the plaintiff's recovery in an amount greater than its proportionate fault. The injured employee receives his assured compensation under the Pension Code as a substitute for a tort recovery against his employer, and the City limits its liability and is immune from suit from its employees. The only problem is that the third party—a stranger to the employee-employer bargain embodied in the Pension Code—must write the check for the difference.

Of course, the majority responds that this was precisely the same situation presented in *Kotecki,* the only difference being that *Kotecki* involved a private employer and this case involves a public employer. There are, however, two additional differences. First, the *Kotecki* holding rests on express language in the Workers' Compensation Act to the effect that the statutory benefits provided thereunder were intended to be the

*full* measure of an employer's liability. *Kotecki*, 146 Ill. 2d at 165 ("The language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits"). The Workers' Compensation Act emphatically provides: "The compensation herein provided \*\*\* shall be the measure of the responsibility of any employer." 820 ILCS 305/11 (West 1996). No such categorical language limiting liability appears in the Pension Code.

The Pension Code by its terms controls only the rights between the public employer and its employee. The right to contribution among tortfeasors was not even recognized at the time that the legislature adopted the Pension Code. See 1963 Ill. Laws 161 (adopting the Illinois Pension Code); *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1977) (establishing the right of contribution). The majority responds that this is also true of the Workers' Compensation Act; and so it is. As Chief Justice Freeman so eloquently opined in his dissent from the denial of rehearing in *Kotecki*, "[i]t could not have been that legislature's intent to limit that right \*\*\*, as \*\*\* contribution did not exist in Illinois at the time of the enactment of the original Workers' Compensation Act. That being the case, it was improper for this court to effectively attribute to the legislature which passed the Act an intent which it could not possibly have had at that time." *Kotecki*, 146 Ill. 2d at 169 (Freeman, J., dissenting upon denial of rehearing). Because the concept of contribution as a legal right in Illinois "must necessarily have been totally foreign in the contemplation of any legislation adopted prior to 1977, the Workers' Compensation Act \*\*\* cannot be deemed by this court as controlling a question which arises as a result of the Contribution Act, a post-1977 legislative enactment." *Kotecki*, 146 Ill. 2d at 171 (Freeman, J., dissenting upon denial of rehearing). The same holds true here for the Pension Code.

The second critical difference between the Pension Code and Workers' Compensation Act is this: under the Pension Code, the City's lien against a judgment or settlement obtained by a firefighter from a third party is limited to the amount of medical and death benefits that the City had paid out "previous to such judgment or settlement." 40 ILCS 5/22—308 (West 1996). Thus, the City's statutory lien only includes the death and medical benefits paid under the Pension Code—here $58, 231.80—and does not include the estimated $1,623,403.24 in total benefits that the City will pay to the decedent's widow and dependents under the Pension Code. Nor does the limited lien in the Pension Code include the additional payments the City will make to the firefighter's survivors under the Firemen's Annuity and Benefit Fund (40 ILCS 5/6—101 *et seq.* (West 1996)). In contrast, an employer's lien under the Workers' Compensation Act, and corresponding maximum liability in contribution under *Kotecki*, reflects the full and complete benefits paid to the employee. *Kotecki*, 146 Ill. 2d at 164-65; 820 ILCS 305/11, 5 (West 1996). Here the City's lien under the Pension Code simply does not reflect the full measure of the City's liability as an employer and, accordingly, is a dubious and insufficient basis for measuring its liability in contribution.

This situation requires legislation. It is ill-advised for a court to speculate about legislative intentions when the statute's drafters were without the first notion of the current controversy. By attributing a nonexistent intent to the legislature that passed the Pension Code, the majority has "usurped the proper role and authority of the Illinois legislature." *Kotecki*, 146 Ill. 2d at 174 (Freeman, J., dissenting upon denial of rehearing). Legislative inaction is not an invitation to the judiciary to write law, and reading statutes by *strained* analogy is a questionable basis for judicial decisions. Therefore, I must respectfully dissent.

JUSTICE NICKELS joins in this dissent.