# Illinois Official Reports

## Appellate Court

---

### *People v. Gauger*, 2018 IL App (2d) 150488

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD R. GAUGER JR., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0488 |
| Filed | June 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 13-CF-140; the Hon. Robbin J. Stuckert, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jack Hildebrand, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, David J. Robinson, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Presiding Justice Hudson and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1  Following a bench trial, defendant, Donald R. Gauger Jr., was convicted of violating an order of protection (720 ILCS 5/12-3.4(a) (West 2012)), stalking (*id.* § 12-7.3(a)(2)), and aggravated stalking (*id.* § 12-7.4(a)(3)). The trial court merged the lesser convictions and sentenced defendant to five years' imprisonment for aggravated stalking. Defendant appeals, contending that he was convicted under an unconstitutional provision of the aggravated-stalking statute. Because defendant's conviction was proper under another, constitutional, portion of the statute, we affirm.

¶ 2  The aggravated-stalking charge alleged that defendant engaged in a course of conduct directed at Crystal Carswell that defendant knew would cause a reasonable person emotional distress while Carswell had an order of protection against him.

¶ 3  At trial, Carswell testified that she had been married to defendant and that they had two children together. She had an active order of protection against him. On September 9, 2012, she got a Facebook message from someone she knew in high school, asking if she had recently sent him a new "friend" request. After looking at the profile the friend told her about, she realized that an old Facebook account of hers had been reactivated.

¶ 4  At about the same time, she received two Facebook messages that she knew immediately defendant had sent. The first message asked about meeting for a date and the second wished her a happy birthday. The messages were from a Facebook account using the name "Ed Kloog." She knew Ed Kloog, an older man who did not live in Illinois at the time. She contacted him about the messages. Kloog responded that he had only one Facebook account and that he was upset that someone was apparently using his name. Carswell then contacted the De Kalb police and filed a complaint against defendant for sending the messages.

¶ 5  The fictitious Facebook activity frightened Carswell. She felt worried every time she left her building. She would constantly look over her shoulder while driving into town, worried that defendant or someone he knew was "going to pop up." She was upset that defendant was "trying to be friends with [her] friends that [she] went to high school with just to find out some things about [her]."

¶ 6  Detective Angel Reyes testified that he investigated Carswell's complaint. A subpoena was issued to Facebook to obtain the Internet Protocol (IP) address for the fictitious Ed Kloog account. Facebook provided two different IP addresses, both of which belonged to Charter Communications (Charter). A subpoena was issued to Charter seeking the names of the persons assigned to the two IP addresses. Charter's response indicated that one of the IP addresses was assigned to Raymond Peterson at 610 Stearn Avenue in Genoa.

¶ 7  Reyes contacted the Department of Corrections and learned that defendant had recently been paroled and was living at 610 Stearn Avenue. Reyes talked to defendant's parole officer, who told Reyes that, during a recent parole check at defendant's home, he obtained the IP address of defendant's computer. Reyes testified that the IP address obtained by the parole officer was the same one that Reyes was investigating.

¶ 8  Using this information, Reyes obtained a search warrant for defendant's residence. Defendant's computer was seized during the search. A subsequent forensic analysis revealed an image identical to the image used as the profile picture on the fictitious Ed Kloog Facebook account. A compact disc near that computer contained a Facebook post by Carswell and a

picture of one of Carswell's children. Police also found a three-ring binder with a page labeled "Facebook" containing four or five fictitious Facebook pages, passwords, and e-mails.

¶ 9    Melvin Smith, of the Chicago Regional Computer Forensics Laboratory, conducted a forensic examination of the data from the computer and worked with Reyes to "bookmark" data that was deemed important to the investigation.

¶ 10    Reyes reviewed Smith's report. Reyes found on the computer a number of photos and e-mails pertaining to Carswell and her family. The forensic analysis also turned up references to Ed Kloog and a copy of one of the photos associated with the fictitious account. The computer also contained a copy of a photo of Carswell in a Kohl's dressing room. Carswell said that she posted the picture on her Facebook page in November 2012. The computer also contained a copy of a Carswell family photo taken at J.C. Penney's that Carswell posted on Facebook.

¶ 11    Reyes spoke with defendant, who initially denied knowing anything about the fictitious Ed Kloog account. He later acknowledged that he knew about the account, but he claimed that it had been created by a woman named "Debbie." Defendant admitted using the account but only to obtain pictures of his and Carswell's daughter from Carswell's Facebook page. Defendant admitted "accessing" Carswell's Facebook page, but he denied ever sending Carswell any messages.

¶ 12    Officer Michael Stewart testified that he collected evidence from defendant's residence. He found documents from an e-mail account related to Carswell, including some Facebook posts and some unopened messages. Stewart found another document that included Carswell's name, date of birth, and Social Security number. Another document appeared to be from someone logged on to a website called Classmates.com, using Carswell's name and asking, "How do you remember Debbie?" Stewart also found mail addressed to Carswell.

¶ 13    The court found defendant guilty on all three charges. The court found that defendant "knowingly engaged in a course of conduct directed at Crystal Carswell and knew or should have known that this course of conduct would cause a reasonable person to suffer other emotional distress." The court specifically found that the evidence "overwhelmingly establishes that the defendant directly or indirectly through third parties monitored and communicated to or about Ms. Carswell through his Internet activities." The court merged the order-of-protection and stalking counts into the aggravated-stalking count and sentenced defendant to five years' imprisonment. Defendant timely appeals.

¶ 14    In his initial brief, defendant contended that, per *People v. Relerford*, 2016 IL App (1st) 132531, his aggravated-stalking conviction violated due process because it was based not on defendant's culpability but on how a "reasonable person" might perceive his conduct. However, during briefing, the supreme court granted leave to appeal in *Relerford*, and we held the appeal in abeyance pending its decision.

¶ 15    The supreme court affirmed but on a different basis. The supreme court accepted the defendant's argument, raised for the first time, that Illinois's stalking statute is unconstitutional to the extent that it prohibits communicating " 'to or about' " someone. *People v. Relerford*, 2017 IL 121094, ¶ 28 (quoting 720 ILCS 5/12-7.3(c)(1) (West 2012)). The court held that the phrase was overbroad and thus impermissibly infringed speech protected by the first amendment. *Id.* ¶¶ 63, 78. Therefore, the court struck that phrase from the statute. *Id.* ¶ 78. The court also reversed the defendant's conviction because it could not be sustained under any other portion of the statute. *Id.* ¶¶ 65-69.

¶ 16    We ordered the parties to submit supplemental briefs addressing the supreme court's decision in *Relerford*. In his supplemental brief, defendant argues that, because his aggravated-stalking conviction was based on his Facebook messages to Carswell, it was based on his having communicated "to or about" Carswell and thus, under *Relerford*, his conviction cannot stand.

¶ 17    The State responds that the trial court also found that defendant "monitored" Carswell (see 720 ILCS 5/12-7.3(c)(1) (West 2012)) and that this portion of the statute is unaffected by *Relerford*. The State cites circumstantial evidence that defendant used fictitious Facebook accounts to contact Carswell's friends and to download pictures and information about her that were not available to the general public.

¶ 18    Defendant was convicted of aggravated stalking. To convict him of stalking, as charged here, the State had to prove that defendant knowingly engaged "in a course of conduct directed at" Carswell that he knew or should have known would cause a reasonable person to "fear for his or her safety or the safety of a third person" or "suffer other emotional distress." *Id.* § 12-7.3(a)(1), (a)(2). The statute defines "course of conduct" as follows:

> "2 or more acts, including but not limited to acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet. A course of conduct may include contact via electronic communications." *Id.* § 12-7.3(c)(1).

Stalking becomes aggravated stalking if the defendant, *inter alia*, violates an order of protection. *Id.* § 12-7.4(a)(3).

¶ 19    Defendant contends that his Facebook messages to Carswell constituted "communicat[ing] to or about" her and that *Relerford* struck this portion of the definition from the statute. We agree with the State however that, unlike in *Relerford*, defendant's conviction can be sustained under another, constitutional, portion of the statute. The trial court here specifically found that defendant monitored Carswell. The stalking statute does not define "monitoring," but the dictionary defines "monitor" as "to watch, keep track of, or check usu. for a special purpose." Merriam-Webster's Collegiate Dictionary 750 (10th ed. 2001). Even without the Facebook messages, the evidence showed that defendant created at least one fictitious Facebook account in the name of Carswell's friend, downloaded pictures of her and her family, and apparently even obtained mail addressed to her. This course of conduct satisfies that definition, and the court reasonably found that defendant "knew or should have known that this course of conduct would cause a reasonable person to suffer other emotional distress."

¶ 20    In his supplemental reply brief, defendant does not challenge the trial court's findings. Instead, defendant argues that the State's argument is inconsistent with *Relerford*. Defendant further contends that the stalking statute defines "non-consensual contact" as requiring a physical presence near the victim or on the victim's property and that thus contact through Facebook does not fit the definition. See 720 ILCS 5/12-7.3(c)(6) (West 2012).

¶ 21    First, the State's argument is consistent with *Relerford*, which dealt only with the "communicates to or about" language in the statutory definition of "course of conduct." *Id.* § 12-7.3(c)(1). The court struck that language from the statute, but it did not purport to invalidate any other portion of the statutory definition, which includes monitoring.

¶ 22    Second, we reject defendant's statutory-construction argument. The definition of "course of conduct" concludes with the catchall "other non-consensual contact." The statute then defines "non-consensual contact" by reference to examples that require a physical presence. *Id.* § 12-7.3(c)(6). Defendant apparently posits that, because the catchall provision refers to "*other* non-consensual contact" (emphasis added) (*id.* § 12-7.3(c)(1)), all of the preceding enumerations of specific conduct must also be "non-consensual contact," which requires a physical presence. We disagree.

¶ 23    Agreeing with defendant that all of the specific types of conduct listed in the definition of "course of conduct" require a physical presence would render meaningless the very next sentence, which specifically states, "[a] course of conduct may include contact via electronic communications." *Id.*; see *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423 (1998) (in construing statute, courts should avoid interpretations that would render any portion of statute meaningless).

¶ 24    Accordingly, we affirm the judgment of the circuit court of De Kalb County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 25    Affirmed.