2018 IL App (1st) 172074
No. 1-17-2074
Opinion filed December 20, 2018

Fourth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ERIC HAMPTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| THE CHICAGO TRANSIT AUTHORITY; THE | ) | No. 14 M1 137143 |
| RETIREMENT PLAN FOR CHICAGO TRANSIT | ) | |
| AUTHORITY EMPLOYEES; and THE CHICAGO | ) | |
| TRANSIT AUTHORITY RETIREE HEALTH CARE | ) | The Honorable |
| TRUST, | ) | John M. Allegretti, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | | |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Gordon and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Eric Hampton was employed as a bus operator for defendant Chicago Transit Authority (CTA) for approximately 28 years. His last day of employment was December 31, 2006, and he began his retirement on January 1, 2007. Beginning in July 2009, premiums for plaintiff's health care were deducted from his retirement annuity payments as established under a 2007 collective bargaining agreement (CBA). He subsequently filed a complaint against defendants, the CTA, the Retirement Plan for Chicago Transit Authority Employees (Retirement Plan), and the Chicago Transit Authority Retiree Health Care Trust (Health Care Trust) (collectively defendants), alleging claims of breach of contract, declaratory judgment, and a

constitutional violation based on the reduction of his retiree health care benefits under the 2007 CBA. Plaintiff maintained that his retirement benefits were governed by the 2004 CBA, which expired on December 31, 2006. Defendants moved to dismiss plaintiff's verified second amended complaint under a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)) for a lack of standing under section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)) and for failure to state a claim under section 2-615 of the Code (*id.* § 2-615). Following a hearing, the trial court granted defendants' motions and dismissed plaintiff's complaint with prejudice.

¶ 2       Plaintiff appeals, arguing that the trial court erred in (1) concluding that he lacked standing to challenge the 2007 CBA and (2) finding that each of the counts in his complaint failed to state a cause of action under the 2004 CBA.

¶ 3       Plaintiff began working for the CTA on December 27, 1978. His last day of employment with the CTA was December 31, 2006. During his employment, plaintiff was a member of the Local 241 Amalgamated Transit Union (Union), which represents bus operators and negotiates the CBA with the CTA. He began receiving his monthly retirement payments in January 2007. Both the Retirement Plan and the Health Care Trust were established by the Illinois Pension Code. 40 ILCS 5/22-101, 22-101B (West 2014). The CTA is a "political subdivision, body politic and municipal corporation" created in 1945 by the Metropolitan Transit Authority Act. 70 ILCS 3605/3 (West 2014).

¶ 4       The operative documents in this case are the CBAs from 2004 and 2007. Each CBA is comprised of the Wages and Working Conditions Agreement (WWCA) and the Retirement Plan Agreement. The 2004 CBA was in effect from January 1, 2004, to December 31, 2006. The term of the 2007 CBA was January 1, 2007, to December 31, 2011. The 2007 CBA was not signed

until October 2009, but the effective date was retroactive to January 1, 2007. The process to reach the agreement with the 2007 CBA involved an interest arbitration. The Supreme Court has described an interest arbitration as " '[a] proceeding that relates to terms of the CBA applicable to multiple employees or employees as a group, rather than to a single employee's grievance.' " *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 13 n.1 (quoting the plaintiffs' complaint in the case). An arbitrator issued a decision that modified retiree health care benefits in accordance with proposed legislation and required retirees to pay a portion of their health insurance premiums.

¶ 5     The proposed legislation was enacted as Public Act 95-708 (eff. Jan. 18, 2008) (the Act). The Act created the Health Care Trust to administer the retiree health care benefits. Beginning in July 2009, the Health Care Trust began to deduct portions of health care premiums from the retirees, including plaintiff.

¶ 6     Plaintiff filed his initial complaint in July 2014, asserting claims for breach of contract, promissory estoppel, and declaratory judgment, as well as a challenge to the constitutionality of the Act. Plaintiff asserted that he retired from the CTA on "on or about December 31, 2006," and his health care benefits had been improperly reduced. Defendants filed motions to dismiss plaintiff's complaint under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)).

¶ 7     On April 13, 2015, the trial court entered a stay pending the Illinois Supreme Court's resolution of *Matthews v. Chicago Transit Authority*, 2014 IL App (1st) 123348, *appeals allowed*, Nos. 117638, 117713, 117728 (Ill. Sept. 24, 2014). On May 5, 2016, the supreme court issued its opinion in *Matthews*, 2016 IL 117638. Plaintiff subsequently filed a motion to lift the trial court's stay and for leave to file a first amended complaint, which the court granted.

¶ 8    Plaintiff's verified first amended complaint asserted claims of breach of contract against the Retirement Plan (count I) and the Health Care Trust (count II) for the reduction in his health care benefits under the Act, as well as a declaratory judgment prohibiting all defendants—the Retirement Plan, the Health Care Trust, and the CTA—from charging him premiums or diminishing his health care benefits (count III), an order declaring the Act unconstitutional under article XIII, section 5 of the Illinois constitution (Ill. Const. 1970, art. XIII, § 5) (count IV), and a preliminary injunction against the Retirement Plan prohibiting it from deducting health care premiums from his retirement annuity check (count V). Plaintiff also sought a temporary restraining order consistent with his request for a preliminary injunction, which the circuit court denied.

¶ 9    Defendants moved to dismiss plaintiff's verified first amended complaint under sections 2-615 and 2-619 of the Code. After a hearing, the trial court granted the Retirement Plan's section 2-615 motion to dismiss counts I, III, IV, and V without prejudice and gave plaintiff leave to file a second amended complaint.

¶ 10    Plaintiff filed his verified second amended complaint in January 2017.[1] In his complaint, he alleged additional facts regarding the 2007 CBA. He alleged that he applied for retirement on December 8, 2006, and received confirmation of his retirement benefits eligibility on December 22, 2006. Plaintiff alleged for the first time that he retired on December 22, 2006. He further alleged that he had agreed to retire on December 31, 2006, pursuant to a settlement agreement with the CTA over a labor grievance. The verified second amended complaint asserted breach of contract claims against the Retirement Plan (count I) and the Health Care Trust (count II), a request for a declaratory judgment that all defendants—the Retirement Plan, Health Care Trust,

_____

[1] Plaintiff titled the complaint as his "verified first amended complaint," but it was his second amended complaint, as he filed a first amended complaint after the stay was lifted. We will refer to it as the second amended complaint for clarity.

and the CTA—could not charge him premiums or diminish his health care benefits because he was not represented by the union during the collective bargaining process (count III), and a claim that the Act was unconstitutional under article XIII, section 5 of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) (count IV).

¶ 11    Plaintiff attached a copy of a settlement agreement between himself and the CTA, involving the unrelated labor grievance, to the second amended complaint. Section 2 of that settlement agreement provided:

>    "The CTA agrees to reinstate [plaintiff] to his position of bus operator with full seniority within twenty (20) days of the execution of this Agreement, but in no event later than November 30, 2006, *solely for the purpose of retiring on January 1, 2007*[.] *** The period of time since [plaintiff's] suspension on December 9, 2004[,] and his discharge on February 4, 2005, through December 31, 2006[,] shall be considered Continuous Service as that term is defined in Section 3.7(3) of the Retirement Plan and referenced in Section 4.3 of the Retirement Plan.

>    *From the date of [plaintiff's] suspension through the date before his retirement effective January 1, 2007*, [plaintiff] agrees that he shall be placed on inactive duty. Should Plaintiff fail to apply for retirement on or before December 14, 2006[,] or if the Retirement Allowance Committee fails to approve [plaintiff's] application for retirement, [plaintiff's] employment status with the CTA will be changed to *reflect his resignation effective December 31, 2006.*" (Emphases added.)

¶ 12    Section 13 of the grievance settlement also stated: "[Plaintiff] understands that he must file for retirement to be effective January 1, 2007[,] on or before December 14, 2006."

¶ 13    Also attached to plaintiff's complaint was his retirement allowance application, a preprinted form provided by the Retirement Plan, dated December 6, 2006, on which plaintiff stated: "My last day of work will be 12/31/2006. My retirement will start on 01/01/2007." The confirmation letter from the Retirement Plan to plaintiff, dated December 22, 2006, stated: "Congratulations on your retirement, which began [*sic*] on January 1, 2007. You will receive your benefits no later than the last business day of each month."

¶ 14    Plaintiff also attached to the second amended complaint a copy of his signed designation or change of retirement plan beneficiary (designation of beneficiary), dated December 27, 1978, which included the following language: "I hereby acknowledge receipt of a copy of the 'Retirement Plan for Chicago Transit Authority Employees' as amended and I agree to the terms and provisions of the Plan, and any future duly authorized Amendments made thereto hereafter."

¶ 15    In February 2017, each defendant filed separate motions to dismiss the verified second amended complaint pursuant to sections 2-615 and 2-619 of the Code, but the motions advanced similar arguments relying on the decision in *Matthews*. All three defendants moved to dismiss plaintiff's claims for lack of standing under section 2-619 of the Code. Each of the defendants also moved to dismiss each count against them under section 2-615 because plaintiff failed to establish a contract between himself and the CTA, and therefore, he had failed to state a cause of action.

¶ 16    All of the motions to dismiss were fully briefed and the trial court conducted a hearing on the motions. On July 27, 2017, the trial court entered its oral ruling into the record. The court found, in relevant part, that plaintiff retired under the 2007 CBA because his effective retirement date was January 1, 2007. The court determined that the 2004 CBA expired on December 31, 2006, and the 2007 CBA became effective on January 1, 2007. Based on these determinations,

the court found that, under *Matthews*, plaintiff lacked standing to sue. The court further

concluded that all four counts failed to state a claim because "plaintiff's claims [were] based on

the 2004 CBA *** which he did not retire under." The court entered a handwritten order to

memorialize its judgment granting all defendants' section 2-615 and 2-619 motions with

prejudice.

¶ 17    This appeal followed in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1,

2015) with a timely notice of appeal filed on August 21, 2017. Accordingly, this court has

jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 18    On appeal, plaintiff asserts that the trial court erred in dismissing his complaint with

prejudice. Specifically as to the dismissal under section 2-619 of the Code, plaintiff argues that,

under *Matthews*, he has standing to pursue his claims challenging a modification to his health

care benefits because he did not retire under the 2007 CBA. He asserts that on January 1, 2007,

he was a retiree who was "outside the bargaining unit and was thus not represented by his

union." He argues that his retirement benefits had fully accrued under the 2004 CBA by the time

he retired. He further asserts that the 2007 CBA did not actually exist on January 1, 2007,

because the CTA and the unions had not yet reached an agreement, and that from the date of his

retirement until October 2009, he was receiving retirement benefits under the 2004 CBA.

Plaintiff also contends that his second amended complaint should not have been dismissed

pursuant to section 2-615 because he sufficiently stated claims for breach of contract, declaratory

judgment, and challenges to the constitutionality of Public Act 95-708.

¶ 19    Section 2-619.1 is a combined motion that incorporates sections 2-615 and 2-619 of the

Code. 735 ILCS 5/2-619.1, 2-615, 2-619 (West 2014). We review a trial court's dismissal of a

complaint under section 2-619.1 of the Code *de novo*. *Morris v. Harvey Cycle & Camper, Inc.*,

392 Ill. App. 3d 399, 402 (2009). A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint by alleging defects on its face. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. In contrast, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint, but raises an affirmative defense or another basis to defeat the claims alleged. *Id.* Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014).

¶ 20    For the purposes of this appeal, we accept as true all the well-pleaded facts in plaintiff's verified first and second amended complaints and draw all reasonable inferences in his favor. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). We are also mindful of the principle that "exhibits attached to a complaint become a part of a complaint, and if there is any conflict between the factual matters in the exhibits and those alleged in the complaint, the factual matters in the exhibit control." *Coghlan v. Beck*, 2013 IL App (1st) 120891 ¶ 24.

¶ 21    We first address the trial court's dismissal of plaintiff's verified second amended complaint pursuant to section 2-619 for lack of standing.

¶ 22    "The doctrine of standing ensures that issues are raised only by those parties who have a sufficient stake in the outcome of the controversy." *Matthews*, 2016 IL 117638, ¶ 39 (citing *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)). When ruling on a section 2-619 motion, the circuit court may, in its discretion, decide questions of fact, but cannot determine disputed factual issues solely on affidavits and counter-affidavits. *Consumer Electric Co. v. Cobelcomex, Inc.*, 149 Ill. App. 3d 699, 703 (1986).

¶ 23    We find the decision in *Matthews* to be relevant to our analysis because it involved CTA retirees challenging the same operative CBAs as in this case. In *Matthews*, the Illinois Supreme Court considered whether the plaintiffs in that case had standing to sue to enforce their rights to retiree health care benefits under the 2004 CBA. 2016 IL 117638, ¶¶ 1-5. The plaintiffs fell into two classes as designated in their complaint. The Class I plaintiffs were retirees who were hired before September 5, 2001, and retired before January 1, 2007. *Id.* ¶ 7. The Class II plaintiffs were retirees who were hired before September 5, 2001, and retired after January 1, 2007 or were current employees. *Id.* The plaintiffs included members of the Amalgamated Transit Union Locals 241 and 308 (Transit Unions) representing bus and rail employees. *Id.* ¶ 1.

¶ 24    The *Matthews* court detailed the history of collective bargaining between the Transit Unions and the CTA and the CBAs.

> "The CTA employs both union and nonunion employees, including members of the Transit Unions, which collectively bargain with the CTA regarding employee wages, working conditions, and retirement benefits. The CBAs between the CTA and the Transit Unions consist of a series of Wages and Working Conditions Agreements (WWCAs), each of which is subject to periodic modification through collective bargaining. ***
>
> ***
>
> Incorporated into each WWCA is the Retirement Plan Agreement, a contract concerning retirement benefits that was first agreed to by the CTA and the Transit Unions in 1949. Article 18 of both the 2004 and 2007 WWCAs provides that the Retirement Plan

> Agreement is incorporated in full into the WWCA 'in all respects and for all purposes, including future proposals for revision in the Plan and in the negotiation or arbitration of proposed revisions.' Correspondingly, the Retirement Plan Agreement provides that it 'is part of the Wage[s] and Working Conditions Agreement between the parties hereto. This Agreement can be changed only in accordance with the provisions of the aforesaid Wage[s] and Working Conditions Agreement.' Collectively, the WWCA and the Retirement Plan Agreement constitute the CBA." *Id.* ¶¶ 10, 12.

¶ 25   With regard to the Class II plaintiffs, the supreme court noted that the complaint acknowledged that " '[t]he Transit Unions are collective bargaining representatives of certain active CTA employees.' " *Id.* ¶ 43. The supreme court recognized that "only parties to a CBA may dispute an arbitration award in court." *Id.* (citing *Stahulak v. City of Chicago*, 184 Ill. 2d 176, 180 (1998)). It follows then that "only the employer and the designated representative of the bargaining unit may bring suit to challenge an arbitration award in circuit court." *Id.* (citing *Stahulak*, 184 Ill. 2d at 180).

¶ 26   Based on this established Illinois law, the supreme court observed that

> "the 2007 CBA provides that the CTA recognizes the transit union as the sole and exclusive collective bargaining agent for the employees in the bargaining unit. An individual member of a collective bargaining unit may bring suit against an employer to challenge an arbitration award only if the court finds that the union, as bargaining agent, breached its duty of fair representation." *Id.* ¶ 44.

Since the complaint contained no such allegation, the Class II plaintiffs were represented by the transit union during the bargaining and arbitration process that resulted in the 2007 CBA, and therefore, the court held that they lacked standing. *Id.* Thus, all counts related to the Class II plaintiffs were dismissed. *Id.* ¶ 125.

¶ 27     However, when considering the Class I plaintiffs, the complaint alleged that the retirees of Class I, even those previously represented by the Transit Unions, were not represented for collective bargaining over the 2007 CBA. The supreme court noted that "[t]he terms of the 2004 CBA establish that the CTA recognized the Transit Unions as 'the sole and exclusive collective bargaining agents for all of its employees.' " *Id.* ¶ 45. The supreme court further observed that the Class I plaintiffs "were no longer employed by the CTA and were not represented in the subsequent collective bargaining and interest arbitration proceedings" that resulted in a modification of benefits the Class I plaintiffs claim had already accrued. *Id.*

¶ 28     The *Matthews* court pointed out that this "fact [was] consistent with Illinois law." *Id.* ¶ 46. "The Illinois Public Labor Relations Act (the Act) defines '[p]ublic employee' as 'any individual employed by a public employer.' " *Id.* (quoting 5 ILCS 315/3(n) (West 2012)). "In addition, the Act allows public employees 'to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment.' " *Id.* (quoting 5 ILCS 315/6(a) (West 2012)). "Accordingly, individuals who are not public employees do not have a right to collective bargaining. [Citations.] Because retirees are not represented in collective bargaining, they have standing to pursue claims for enforcement of benefits granted under a CBA." *Id.* "Though a union is under no obligation to represent the interests of retirees in collective bargaining, it may choose to do so if the retirees agree to such representation." *Id.* ¶ 49. However, the supreme court concluded that nothing in the complaint or its attachments

indicated that the Class I plaintiffs agreed to union representation during the negotiation of the 2007 CBA. Accordingly, the supreme court held that, based on the record before it, the Class I plaintiffs had standing to pursue their claims. *Id.*

¶ 29    The *Matthews* court then turned to the question of whether the health care benefits were vested rights that could not be diminished or impaired through the collective bargaining process, which included a review of the pension protection clause of the Illinois constitution. *Id.* ¶ 51. Article XIII, section 5, of the 1970 Illinois Constitution, commonly known as the "pension protection clause," provides: "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. The *Matthews* court recognized that the supreme court "has consistently held that the contractual relationship protected by section 5 of article XIII is governed by the actual terms of the contract or pension plan in effect at the time the employee becomes a member of the retirement system." *Matthews*, 2016 IL 117638, ¶ 59 (citing cases). "The protections afforded to such benefits by article XIII, section 5 attach once an individual first embarks upon employment in a position covered by a public retirement system, not when the employee ultimately retires." *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 46. "Accordingly, once an individual begins work and becomes a member of a public retirement system, any subsequent changes to the Pension Code that would diminish the benefits conferred by membership in the retirement system cannot be applied to that individual." *Id.*

¶ 30    The *Matthews* court observed:

"For those public servants whose employment is governed

by a contract, such as a CBA, the pension protection clause

guarantees the retirement benefits that are provided in their employment contract. The terms of such an agreement are subject to negotiation between the public employer and the designated collective bargaining representative and are implemented by the applicable provisions codifying the agreement in the Pension Code. If the terms of the agreement provide for vested retirement benefits, those benefits are constitutionally protected by section 5 of article XIII. However, as explained above, if the underlying contract allows for the modification of certain retirement benefits, the pension protection clause does not preclude modification or alter the essential nature of the rights granted under the contract. Therefore, neither the language of the pension protection clause nor our prior case law presents an obstacle to a contractual provision that permits subsequent modification of public retirement benefits." *Matthews*, 2016 IL 117638, ¶ 66.

¶ 31    After reviewing the terms of the 2004 CBA, the supreme court concluded that the Class I plaintiffs had an enforceable vested right in the health care benefits that survived the expiration of the contract. *Id.* ¶ 89. In its conclusion, the supreme court held that the Class I plaintiffs stated a cause of action against the Retirement Plan and Health Care Trust for declaratory judgment and a violation of the pension protection clause as well as a breach of contract against the Retirement Plan. The court did not remand any claims against the CTA to the trial court for further proceedings. *Id.* ¶ 104.

¶ 32    Turning back to the present case, we must determine what plaintiff's status was on January 1, 2007. Specifically, was he an employee or was he a retiree under the Retirement Plan Agreement? And was he represented by the Union during the collective bargaining process for the 2007 CBA? We first consider the language in the Retirement Plan Agreement concerning who was represented as an "employee" under the agreement. The Retirement Plan Agreement was entered into by the CTA and the transit unions for both rail and bus employees. The purpose of the Retirement Plan Agreement is "to provide retirement allowances in case of old age *** for the eligible employees of the Chicago Transit Authority who are represented by said party of the second part (the Union)."

¶ 33    Section 3.3(1) of the Retirement Plan Agreement defined an "employee" for the purpose of the plan, in relevant part, as:

> "An individual employed on June 1, 1948 or employed subsequent thereto but prior to May 16, 1980 by the Authority, receiving a regular and stated compensation from the Authority *other than a retirement allowance or retainer*." (Emphasis added.)

¶ 34    Section 3.3 concluded with the following exclusion: "Retired employees are not included, except as provided in Section 20." The supreme court in *Matthews* considered this exclusionary phrase from the definition. In a footnote, the *Matthews* court rejected the argument by the Retirement Plan and the Health Care Trust that the definition of the term "employee" in the Retirement Plan Agreement meant that retirees were represented during the collective bargaining over the 2007 CBA. *Id.* ¶ 45 n.7. The court reviewed the references in section 20 and found that the two references therein "do not indicate that retirees are considered to be employees for purposes of collective bargaining." *Id.* The court concluded, "Nothing in the plan contradicts the

14

contract language stating that only current employees are represented by the designated agent for purposes of collective bargaining." *Id.*

¶ 35    We further refer to sections 4.1 and 4.2 of the Retirement Plan Agreement which state:

> "4.1    Subject to Paragraph 4.2., all employees, as defined above, shall come under this Plan and continue as contributing employees so long as they are in the employ of the [CTA] in an occupation or position to which this agreement applies or may hereafter be made to apply.
>
> 4.2    This agreement shall apply, in the first instance, only to the employees represented by said party of the second part [the Union]; it may be made applicable to other employees or groups of employees of the [CTA] by agreement between the [CTA] and such other employees, either individually or when represented by a bargaining agent, then with such bargaining agent."

¶ 36    These sections of the Retirement Plan Agreement indicate that plaintiff would not be considered an employee on January 1, 2007, since he was no longer receiving regular and stated compensation after his last day of work on December 31, 2006. As of January 1, 2007, plaintiff was not a contributing employee in the employ of the CTA. Section 4.2 limits the application of the Retirement Plan Agreement to employees represented by the Union or other employees represented by a bargaining agent. Therefore, if plaintiff was a retiree on January 1, 2007, he was not an employee represented by the Union under the specific terms of the Retirement Plan Agreement.

¶ 37    We also find the legal definitions of "before" and "after" relevant to our analysis. The word "before" is defined in Black's Law Dictionary as "Prior to; preceding ***." Black's Law Dictionary 154 (6th ed. 1990). "After" is defined as "Later, succeeding, subsequent to ***. Subsequent in time to." *Id.* at 61. Under these definitions, the Class I plaintiffs in *Matthews* retired "prior to" January 1, 2007, and the Class II plaintiffs retired "subsequent to" January 1, 2007. Thus, plaintiff is left between the classes, since he retired "on" January 1, 2007, not "prior to," nor "subsequent to" January 1, 2007.

¶ 38    Additionally, multiple exhibits to the complaint indicate that plaintiff began his retirement on January 1, 2007. The letter from the Retirement Plan, dated December 22, 2006, congratulated plaintiff on his retirement, "which began on January 1, 2007," and noted that his benefit would be received no later than the last business day of each month. The settlement agreement also stated that plaintiff was reinstated "solely for the purpose of retiring on January 1, 2007."

¶ 39    Moreover, a letter sent from the Retirement Plan and the Health Care Trust to participants was attached to plaintiff's complaint. In the letter, the Retirement Plan and the Health Care Trust addressed the impact of the decision in *Matthews* on the participants. We point out that the letter includes January 1, 2007, in both groups while describing the *Matthews* classes inconsistently. Initially, the letter describes the two groups of plaintiffs as follows.

> "The first group includes those people who were hired by the CTA before September 5, 2001, and *retired between January 1, 1980 and January 1, 2007*. The second group includes those people who were hired before September 5, 2001 and are still active

employees, or who have *already retired on or after January 1,*

*2007*." (Emphasis added.)

¶ 40    Later, the letter describes the Class I plaintiffs consistently as above, but states that Class II plaintiffs included those who "*retired after January 1, 2007 or still active*." (Emphasis in original.) In the first description, the date of January 1, 2007, fell within both classes, but in the second description the date did not fall within the second group. Notably, only the second description for the Class II plaintiffs accurately stated the class as set forth in *Matthews*. We note this disparity to illustrate that two of the defendants here, the Retirement Plan and the Health Care Trust, in their own document indicated confusion over the status of different individuals on January 1, 2007.

¶ 41    Significantly, the Class II plaintiffs in *Matthews* were defined in the complaint as those persons retiring "after January 1, 2007," not "on or after." Nothing in *Matthews* delineates the specific date on which any of the plaintiffs retired, other than they retired before January 1, 2007, or after January 1, 2007. Plaintiff here did not retire before or after January 1, 2007, but instead, retired on January 1, 2007.

¶ 42    After considering *Matthews* as well as the relevant exhibits in the instant case, we find that *Matthews* does not answer the specific question before us—whether plaintiff retired under the 2004 CBA or the 2007 CBA—since plaintiff does not fit neatly within either class by being retired on January 1, 2007. Plaintiff began his retirement on January 1, 2007, not before and not after that date as the class designations were set out in *Matthews*. Thus, the question before us is whether plaintiff's status on January 1, 2007, grants him standing, like the Class I plaintiffs, or if he lacks standing, like the Class II plaintiffs. The exhibits attached to plaintiff's complaint

designate December 31, 2006, as his last day of employment, with his retirement beginning on January 1, 2007.

¶ 43     If plaintiff retired after January 1, 2007, for example on January 2, 2007, then he would have been represented by the Union on January 1, 2007, because he was still an employee on January 1, 2007, and a retiree on January 2, 2007. However, plaintiff's last day of work was December 31, 2006, the day the 2004 CBA expired, and his retirement began on January 1, 2007. In its findings on the record, the trial court did not consider the precise question here, *i.e.*, where does a plaintiff whose retirement began on January 1, 2007, stand. Rather, the court concluded that because plaintiff retired on January 1, 2007, he fell within Class II and lacked standing.

¶ 44     At oral argument, counsel for the Retirement Plan repeatedly argued that plaintiff was an "employee who retired" on January 1, 2007. We reject this characterization of plaintiff's status on January 1, 2007. As pointed out above, under the Retirement Plan Agreement definition, an employee is an individual "receiving a regular and stated compensation from the Authority other than a retirement allowance or retainer." Nothing in the record suggests that plaintiff was receiving regular and stated compensation on January 1, 2007, but the record does suggest plaintiff began receiving his retirement allowance that first day of January. The Retirement Plan Agreement does not distinguish the status of a retiree on his or her first day of retirement from other retirees. Further, the Retirement Plan Agreement explicitly excluded retired employees from its definition of an employee, and any argument otherwise was rejected by the supreme court in *Matthews*. Under the Retirement Plan Agreement, it is clear that on January 1, 2007, plaintiff was a retiree, not an employee.

¶ 45    Both the CTA and the Retirement Plan advance the argument that plaintiff was bound by the changes in the 2007 CBA because he signed the Designation of Beneficiary form in 1978, which provided: "I hereby acknowledge receipt of a copy of the 'Retirement Plan for Chicago Transit Authority Employees' as amended and I agree to the terms and provisions of the Plan, and any future duly authorized Amendments made thereto hereafter." They argue that this language in the form shows that plaintiff agreed to be bound by any amendments in the Retirement Plan Agreement as agreed by the Union.

¶ 46    We note that the supreme court in *Matthews* declined to address a similar argument from the Retirement Plan and the Health Care Trust about the designation of beneficiary form required of all CTA employees because the record in that case did not contain the form signed by the Class I plaintiffs. *Matthews*, 2016 IL 117638, ¶ 47.

¶ 47    We do not believe that the Designation of Beneficiary form supports a claim that plaintiff was bound by the 2007 CBA. Since plaintiff was a "retired employee" on January 1, 2007, any amendments made after his employment ceased on December 31, 2006, were not "duly authorized" such that he would be bound by them. Taking this argument to its logical extreme, an individual who signed the Designation of Beneficiary form when he or she began employment would then be bound by any amendments beyond their employment, even when not part of the bargaining unit. Rather, we believe that the form allows for an individual to be bound by any amendments made to the Retirement Plan Agreement while an employee as defined within the Retirement Plan Agreement and represented by the Union as his or her agent. The terms do not extend beyond the time of the individual's period as an employee.

¶ 48    As we have set forth, the record establishes that plaintiff's final day as an employee receiving compensation was December 31, 2006. As of 12:00 a.m. on January 1, 2007, plaintiff

was retired. As a retired employee, plaintiff was not included in the definition of an employee under the Retirement Plan Agreement. He was no longer receiving regular and stated employee compensation and his retirement benefits began that day. Further, plaintiff's complaint alleged that he was not represented by the Union during the collective bargaining process for the 2007 CBA, and we must accept all allegations in the complaint as true for purposes of a motion to dismiss under section 2-619. See *Edelman*, 338 Ill. App. 3d at 164. Since plaintiff was not represented by the Union on January 1, 2007, like the Class I plaintiffs in *Matthews*, plaintiff has standing to challenge the reduction in his health care benefits under the 2007 CBA. Accordingly, the trial court erred in dismissing plaintiff's second amended complaint for lack of standing under section 2-619(a)(9) of the Code.

¶ 49 Since we have concluded that plaintiff was a retired employee on January 1, 2007, and has standing to challenge the changes to his health care benefits, we also reverse the trial court's dismissal of plaintiff's second amended complaint under section 2-615 for failure to state a cause of action. The trial court based its dismissal of all counts for all defendants on its conclusion that plaintiff retired under the 2007 CBA. Because plaintiff's claims were based on the 2004 CBA, the trial court held that plaintiff failed to state a cause of action. Given our finding that plaintiff did not retire under the 2007 CBA, this reasoning cannot support the dismissal of plaintiff's complaint.

¶ 50 Notwithstanding our holding reversing the motions to dismiss, we consider the CTA's arguments that plaintiff failed to state a cause of action against the CTA for either a declaratory judgment or a constitutional claim. We acknowledge that the *Matthews* court did not include the CTA in its remand for claims relating to the Class I plaintiffs. *Matthews*, 2016 IL 117638, ¶ 104.

¶ 51    In his second amended complaint, plaintiff asserted claims for declaratory judgment and a constitutional violation of the Pension Code against all three defendants. Count 3 sought a declaratory judgment and alleged that plaintiff had "a legal tangible interest in enforcing the contracts in effect when he retired from CTA which is the 2004 CBA and the related [Retirement Plan Agreement] document since the alleged 2007 CBA was not in effect at the point his benefits accrued." Plaintiff further asserted, "Defendants have numerous opposing interests in that all of them have an interest in reducing health care costs for retirees by collecting premiums and curtailing health care benefits to retirees." Plaintiff contended that an "actual controversy exists between the parties regarding these interests since the Defendants persist in interpreting their obligations to [plaintiff] contrary to [plaintiff's] expectations and the written contracts that include those obligations."

¶ 52    The CTA argues that plaintiff has failed to state a claim against it because the declaratory relief is based on the enforcement of plaintiff's contractual rights, but no breach of contract has been alleged against the CTA, nor has plaintiff asserted that a contract existed with the CTA. Further, the CTA contends that it does not have an adverse interest in plaintiff's receipt of his health care benefits because the CTA was not responsible for providing these benefits following the enactment of section 22-101B of the Pension Code.

¶ 53    "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003).

> "The declaratory judgment procedure allows ' " 'the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can

then learn the consequences of their action before acting.' " ' " *Id.* at 372-73 (quoting *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983), quoting *Buege v. Lee*, 56 Ill. App. 3d 793, 798 (1978), quoting Ill. Ann. Stat., ch. 110, ¶ 57.1, Historical and Practice Notes, at 132 (Smith-Hurd 1968)).

"A declaratory judgment action is purely statutory and is to be liberally construed. However, the provisions of the statute must be strictly complied with." *Id.* at 373. Moreover, "[a] declaratory judgment action is strictly remedial. The statute does not create substantive rights or duties, but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." *Id*; see also 735 ILCS 5/2-701 (West 2014).

¶ 54    Section 22-101B(b)(7) provides:

> "No earlier than January 1, 2009 and no later than July 1, 2009 as
> the Retiree Health Care Trust becomes solely responsible for
> providing health care benefits to eligible retirees and their
> dependents and survivors in accordance with subsection (b) of this
> Section 22-101B, the [CTA] shall not have any obligation to
> provide health care to current or future retirees and their
> dependents or survivors." 40 ILCS 5/22-101B(b)(7) (West 2014).

¶ 55    Since the CTA has no obligation to provide plaintiff his heath care benefits and plaintiff has failed to allege any breach of contract by the CTA as asserted in his count seeking a declaratory judgment, we conclude that plaintiff has failed to state a cause of action against the CTA. Absent any contract upon which plaintiff based his claim, his claim against the CTA cannot stand. For this reason, we affirm the dismissal of count III against the CTA.

¶ 56    Next, we review plaintiff's constitutional claim against the CTA. Count 4 was alleged against all three defendants. Plaintiff asserted that prior to July 1, 2009, he was receiving retiree health care benefits "as promised in the current CBA and [Retirement Plan Agreement] documents as administered by CTA." Plaintiff alleged that Public Act 95-708 altered the law regarding health care benefits for retirees in its creation of section 22-101B of the Pension Code.

¶ 57    Section 22-101B established the Health Care Trust with

> "the purpose of providing health care benefits to eligible retirees and their dependents and survivors in accordance with the terms and conditions set forth in this Section 22-101B. The Retiree Health Care Trust shall be solely responsible for providing health care benefits to eligible retirees and their dependents and survivors *** by *** no earlier than January 1, 2009 and no later than July 1, 2009." *Id.* § 22-101B(b).

As cited above, under this section, the CTA "shall not have any obligation to provide health care" to retirees. *Id.* § 22-101B(b)(7). Section 22-101B authorized the Health Care Trust to pay up to 45% of the total cost of their retiree health care benefits. *Id.* § 22-101B(b)(5).

¶ 58    Beginning in July 2009, the Retirement Plan deducted the heath care premiums from his monthly retirement annuity. Plaintiff alleged that Public Act 95-708 diminished his retirement benefits and was unconstitutional as applied to him.

¶ 59    However, as plaintiff's own allegations set forth, the CTA bears no responsibility to provide health care benefits to retirees. Rather, the Retirement Plan authorizes the deductions from his payments and the Health Care Trust administers his health care benefits. The CTA has no role related to his health care benefits under Public Act 95-708. Without any involvement in the alleged constitutional violation of the Pension Code, plaintiff cannot state a cause of action

against the CTA. Accordingly, we affirm the dismissal of count 4 of plaintiff's second amended complaint against the CTA.

¶ 60    Based on the foregoing reasons, we affirm the dismissal of counts 3 and 4 against the CTA, but reverse the dismissal of counts 1, 3, and 4 against the Retirement Plan and counts 2, 3, and 4 against the Health Care Trust. We remand for further proceedings consistent with this decision.

¶ 61    Affirmed in part and reversed in part.

¶ 62    Cause remanded.