2020 IL App (1st) 190577-U

THIRD DIVISION
March 4, 2020

No. 1-19-0577

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ERNEST DAGGS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| PAN OCEANIC ENGINEERING COMPANY and | ) | |
| ROBERT CUMMINGS, | ) | No. 17 L 13056 |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (ROBERT CUMMINGS, | ) | Honorable |
| | ) | Moira Johnson, |
| Defendant-Appellee). | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    Held:    Where a factual issue existed as to whether the plaintiff police officer's injuries arose out of, and in the course of, employment, the trial court's section 2-619 dismissal of plaintiff's claims against co-officer defendant was erroneous.

¶ 2    This appeal concerns the dismissal of claims of plaintiff, Ernest Daggs, a Chicago police officer, against defendant, fellow officer, Robert Cummings, for injuries arising out of a 2017 car accident.

¶ 3      The record shows that plaintiff filed an initial complaint against North Shore Gas Company and Pan Oceanic Engineering Company. Plaintiff alleged that on October 26, 2017, he was injured when the vehicle in which he was a passenger traveled over "uneven defective roadway" and fell into a hole on the 1200 block of East 83rd Street in Chicago. Plaintiff alleged that the hole in the roadway was caused by North Shore Gas Company and Pan Oceanic Engineering Company, who were performing work on the roadway at that location.

¶ 4      On February 21, 2018, plaintiff filed an amended complaint, substituting People's Gas Light and Coke Company for North Shore Gas Company, and adding claims against defendant. Plaintiff alleged that at the time of the accident, defendant was driving the vehicle in which plaintiff was a passenger. Plaintiff stated that defendant drove the vehicle over the "uneven and defective roadway, causing his vehicle to crash into a hole in the roadway." Plaintiff alleged that defendant acted "[w]illfully, wantonly and recklessly" and "negligently" in operating the motor vehicle.

¶ 5      On September 11, 2018, defendant filed a Motion to Dismiss the counts of the amended complaint directed against him pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code). Defendant stated that at "all relevant times, both [plaintiff] and [defendant] were acting in the course and scope of their duties as Chicago Police Officers," and that the "Pension Code bars police officers from suing their fellow officers for injuries that arose out of and in the course of their employment." Defendant attached an affidavit, attesting that at the time of the accident, he was "the driver of a marked Chicago Police Department vehicle in which [plaintiff] was a passenger." He further averred that, at that time, he and plaintiff were "on-duty police officers, acting within the course and scope of [their] employment with the Chicago Police Department." He further stated that they had "just completed [their] lunch break" and were "coming from

Track's End Restaurant, 8538 S. Holland Rd., and traveling to meet [their] supervising officer, Sergeant Gochee." Cummings attested that plaintiff "told [him] that Sergeant Gochee wanted to meet with [them]" and Cummings "began driving toward a location on Stony Island Avenue to meet with Sergeant Gochee." Both officers "were on [their] way to meet Sergeant Gochee at the time of the subject occurrence."

¶ 6    Plaintiff filed a response to defendant's motion to dismiss on November 20, 2018. Plaintiff argued the officers were not acting in the scope of their employment at the time of the accident, and that the accident "was unrelated to their employment duties as police officers." Accordingly, plaintiff maintained that the Pension Code did not apply. Plaintiff attached an affidavit in which he stated that at the time of the accident, the officers were "on [their] lunch break" and had just finished eating at "Track's End," a restaurant "outside of the district [they] worked in." Plaintiff agreed that the officers were "on [their] way back [to their] district" and were "going to meet [their] sergeant" in the third district. However, plaintiff maintained that, at the time of the accident, he was "not in engaged in any activity that arose out of [his] Chicago Police Department duties." Plaintiff averred that the officers "were not on an emergency call, *** had not been dispatched, *** had no specific assignments, *** were not engaged in any investigation and *** were not on patrol." Plaintiff further stated that it was "not an official police activity to go to lunch. It [wa]s a break from police activities," and officers were "free to choose where [they] want to go to lunch."

¶ 7    On February 22, 2019, the trial court entered a written order granting defendant's Section 2-619 Motion to Dismiss the Amended Complaint against him, and dismissing the claims against defendant with prejudice. In the written order, the court found that "Plaintiff should have filed a Worker's Compensation claim," and that the "administrative agency must determine whether this

incident occurred within the scope of employment." The Court stated that "[w]ithout such a determination, prior to filing this negligence action," it was required to "grant the motion to dismiss." The court further found there was "no just reason to delay enforcement or appeal of this judgment."

¶ 8    Plaintiff filed a timely notice of appeal on March 19, 2019. Meanwhile, People's Gas Light and Coke Company was voluntarily dismissed from the case on October 1, 2018, pursuant to an agreed order. Following the dismissal of the claims against defendant, plaintiff's case against Pan Oceanic Engineering Company continued in the trial court. This court has jurisdiction over this appeal pursuant to Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 9    In this court, plaintiff challenges the dismissal of his claims against defendant under section 2-619 of the Code. A motion pursuant to section 2-619 of the Code admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993); *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995).

¶ 10   Specifically, section 2-619(a)(9) allows a defendant to move to dismiss on the basis that the claim is barred by "other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). The affirmative matter brought to the attention to the court in a section 2-619 motion may be "something in the nature of a defense that completely negates the cause of action or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997). Our supreme court has emphasized, however, that the affirmative matter is not "merely

4

evidence upon which defendant expects to contest an ultimate fact stated in the complaint." *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008), as modified on denial of reh'g (Sept. 22, 2008). This court reviews the circuit court's dismissal of a complaint pursuant to Section 2-619 *de novo*. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13.

¶ 11    In ruling on a section 2-619 motion to dismiss, the circuit court considers external submissions of the parties, including affidavits. *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 974 (2005) (citing *Zedella*, 165 Ill. 2d at 185). The court construes the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). When ruling on a section 2-619 motion, the circuit court may, in its discretion, decide questions of fact, but cannot determine disputed factual issues solely on affidavits and counter-affidavits. *Hampton v. Chicago Transit Authority*, 2018 IL App (1st) 172074, ¶ 22, citing *Consumer Electric Co. v. Cobelcomex, Inc.*, 149 Ill. App. 3d 699, 703 (1986); see also *Glass Specialty Co. v. Litwiller*, 147 Ill. App. 3d 653, 655 (1986) ("Where conflicting affidavits in support of a section 2–619 motion are presented to a trial court, the court has a duty either to hear other proof bearing on the material facts, or to deny the motion without prejudice to the right of the defendant to raise the subject matter thereof by answer. It is improper to simply weigh the conflicting affidavits."). "If a cause of action is dismissed during hearing on a section 2-619 motion on the pleadings and affidavits, the question on appeal is whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 494 (1994).

¶ 12    In this court, plaintiff contends that the court erred in dismissing the action against defendant, because it erroneously determined that he should have filed a Workers' Compensation claim. Plaintiff also maintains that a determination of whether his injuries "arose out of and in

the course of employment" should have been made by the circuit court, rather than leaving the adjudication of that issue to the Workers' Compensation Commission. Accordingly, plaintiff asks this court to reverse the granting of defendant's motion to dismiss, and to remand the case for further proceedings in which the circuit court can consider whether the officers were acting in the course of employment at the time of the accident.

¶ 13     Defendant acknowledges that the trial court's reasoning was erroneous, and that the circuit court "could have and should have adjudicated the 'scope of employment issue' itself as a matter of law."

¶ 14     The fundamental purpose of the Illinois Workers' Compensation Act is "to afford protection to employees by providing them with prompt and equitable compensation for their injuries." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 180-81 (1978). However, the express language of the Workers' Compensation Act provides that "any duly appointed member of a police department in any city whose population exceeds 500,000 according to the last Federal or State census" does not qualify as an employee covered by the Workers' Compensation Act.  820 ILCS 305/1(b) (West 2016). Instead, police officers employed by municipalities with populations exceeding 500,000 are covered by the "analogous" system "created for the compensation of injured police officers under the Illinois Pension Code." *Sweeney v. City of Chicago*, 131 Ill. App. 2d 537, 542 (1971); see also *McNamee v. Federated Equipment & Supply Co., Inc.*, 181 Ill. 2d 415, 424-25 (1998).

¶ 15     In this case, there is no question that plaintiff is a duly appointed member of the Chicago Police Department, and that the population of Chicago exceeds 500,000. See *Quick Facts,* U.S. Census Bureau, https://www.census.gov/quickfacts/chicagocityillinois (last visited Jan. 29, 2020); *In re Marriage of Aud*, 142 Ill. App. 3d 320, 325 (1986) (appellate court "may take

judicial notice of census materials"); *Lacny v. Police Board of the City of Chicago*, 291 Ill. App. 3d 397, 403 (1997) (taking judicial notice that Chicago's population is more than 500,000). Accordingly, plaintiff is not an employee covered by the Workers' Compensation Act, and the trial court's conclusion that plaintiff was required to file his claims under that Act was erroneous.

¶ 16    We also agree with the parties that the issue of whether the officers were acting within the scope of their employment at the time of the accident "was for the Circuit Court to answer." "An employee is precluded from maintaining a common law action against a co-employee only if the injured employee was 'engaged in the line of his duty' at the time the injury was sustained." *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 85 (1985). Courts assessing common law actions brought in the circuit court have considered the question of whether an employee was acting within the scope of employment before determining whether a remedy is available in the circuit court, or only under the Workers' Compensation Act or the Pension Code. See, e.g., *Mitsuuchi v. City of Chicago,* 125 Ill. 2d 489, 497 (1988); *Unger*, 107 Ill. 2d at 81-84; *Lohman v. Bemis*, 289 Ill. App. 3d 139, 140-42 (1997); *Fligelman v. City of Chicago*, 275 Ill. App. 3d 1089, 1092-95 (1995). Likewise, here, the circuit court should have assessed whether plaintiff's claims against defendant arose out of or in the course of employment, and were thus barred by the Pension Code.

¶ 17    Defendant, however, contends that the trial court's errors are of no consequence because this court can affirm on any basis supported by the record, pursuant to our *de novo* review. Specifically, defendant asserts the circuit court properly dismissed the complaint because plaintiff's claims against him are barred by the Pension Code's exclusivity provision, asking this court to determine, as a matter of law, that plaintiff's injuries arose out of, and in the course of, employment. Plaintiff, however, maintains that the affidavits submitted by the parties illustrate

7

that issues of material fact exist regarding whether plaintiff's injuries occurred in the scope of employment, such that dismissing the complaint pursuant to section 2-619 was inappropriate. Because a circuit court cannot determine disputed factual issues solely on affidavits and counter-affidavits (*Hampton*, 2018 IL App (1st) 172074, ¶ 22) in dismissing a complaint pursuant to section 2-619, we must determine whether there is any disputed factual issue that would preclude dismissal.

¶ 18    Pursuant to the Illinois Pension Code:

> "Whenever any city or village enacts an ordinance pursuant to this Division, no common law right to recover damages against such city or village for injury or death sustained by any policeman *** *while engaged in the line of his duty* *** shall be available to any policeman *** who is covered by the provisions of such ordinance." 40 ILCS 5/22-307 (West 2016) (emphasis added).

Instead, an officer subject to the Pension Code who is "injured accidentally while in performance of his duties *** is only entitled to receive compensation as provided under the Illinois Pension Code and the Chicago Municipal Code." *Lohman*, 289 Ill. App. 3d at 142.

¶ 19    As the plain language of the Pension Code makes clear, an officer is precluded from maintaining a common law action against a co-officer only if the injured officer was "engaged in the line of his duty" at the time the injury was sustained. 40 ILCS 5/22-307 (West 2016); see also *Unger*, 107 Ill. 2d at 85.

¶ 20    The Act and the Code serve similar purposes, and courts properly use the Act to aid interpretation of the Code. *Mitsuuchi*, 125 Ill. 2d at 493-93. Cases under the Act establish that an employee is "engaged in the line of his duty" at the time of his injury if the injury arises both out

of, and in the course of, the employment. *Caterpillar Tractor Co. v. Industrial Commission* (1989), 129 Ill. 2d 52, 57.

¶ 21    An injury arises in the course of employment if the time, place and circumstances of the injury show that the employee was engaged in the line of his duty when injured. *Scheffler Greenhouses, Inc. v. Industrial Commission*, 66 Ill. 2d 361, 366 (1977); *County of Cook v. Industrial Commission*, 165 Ill. App. 3d 1005, 1007 (1988). The injury arises out of the employment if a risk incidental to the employment led to the injury. *Id.*, at 1009; see also *Sangster v. Keller*, 226 Ill. App. 3d 535, 539 (1992) ("[A]n injury arises out of the employment if the conditions or nature of the employment increase the employee's risk of harm beyond that to which the general public is exposed.").

¶ 22    Whether an injury arises out of, and in the course of, the employment, is generally a factual question. *Aaron v. Industrial Commission*, 59 Ill.2d 267, 269 (1974) ("The question of whether an injury arose in the course of employment is a question of fact."). "Generally speaking, a deviation for purely personal reasons takes an employee out of the course of his employment*." Johnson v. Illinois Workers' Compensation Commission*, 2011 IL App (2d) 100418WC, ¶ 24; see also *Aaron v. Industrial Commission*, 59 Ill. 2d 267, 269 (1974) ("[A] personal deviation by an employee can break the link with his employment."); *C. Iber & Sons, Inc. v. Industrial Commission*, 81 Ill. 2d 130, 135; *Archer Daniels Midland Co. v. Industrial Commission*, 91 Ill. 2d 210, 215 (1982); *Checker Taxi Cab Co. v. Industrial Commission*, 45 Ill. 2d 4, 6–7 (1970); *Public Service Co. of Northern Illinois v. Industrial Commission*, 395 Ill. 238, 242 (1946).

¶ 23    Particularly in cases where an employee is injured going to or from the place of employment, or during a lunch break, whether the injury arises out of, and in the course of, the

employment "will depend largely on the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of the employer cannot not [*sic*] continue, and the question where that line is to be drawn has been held to be usually one of fact." *Wabash Ry. Co. v. Indus. Commission*, 294 Ill. 119, 123 (1920); see also *City of Springfield v. Industrial Commission*, 244 Ill. App. 3d 408, 410 (1993) (lunchtime injuries "can be characterized as governed by the rules applicable to injuries suffered while going to or from work.").

¶ 24    In general, "lunchtime injuries suffered away from the employer's premises by employees with fixed hours and places of employment and unpaid lunches, and who are not engaged in employer errand running or other employment-related activity, are not compensable." *Id.*; see also *Pearce v. Industrial Commission*, 299 Ill. 161, 164 (1921) ("Ordinarily, where the lunch period is not subject to the employer's control or restricted in any way, and the employee is free to go where he will at that time, if he is injured on the public street, off the premises of the employer, the authorities hold that the injury does not arise out of the employment."). However, the guiding principle as to whether the injury is compensable is "whether 'the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the intervals can be deemed to have retained authority over the employee * * *.' " *City of Springfield*, 244 Ill. App. 3d at 410 (citing *Lynch Special Services v. Industrial Commission*, 76 Ill. 2d 81, 90 (1979)).

¶ 25    Here, however, the circuit court never considered the question of whether the police department had retained authority over the officers under the circumstances presented here. Construing the pleadings and supporting affidavits in the light most favorable to plaintiff, as we must at this juncture (*Van Meter*, 207 Ill. 2d at 367-68), we do not find the facts to so

10

overwhelmingly support the conclusion that plaintiff's injuries occurred out of, and in the course of, employment, to allow this court to make that determination as a matter of law.

¶ 26    Instead, defendant's arguments in favor of dismissal highlight a factual dispute surrounding whether the officers were acting "in the scope of employment" at the time of the accident. See *Smith*, 231 Ill. 2d at 121–22. Whether the exclusivity provision of the Pension Code applies in this case depends on the resolution of that disputed question of fact. See *id.*; *Illinois Graphics Co.*, 159 Ill. 2d at 494 (the question on appeal of a dismissal pursuant to section 2-619 "is whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law."); *Hampton*, 2018 IL App (1st) 172074, ¶ 22 (a court cannot determine disputed factual issues solely on affidavits and counter-affidavits).

¶ 27    Defendant relies on two cases, *Johnson* and *Springfield*, to support his contention that the officers were acting within the scope of their employment at the time of the accident. However, we find those cases distinguishable from the case at bar.

¶ 28    In *Johnson*, 2011 IL App (2d) 100418WC, a deputy sheriff was injured in a car accident after performing a personal errand outside of his patrol area. The Commission concluded that the claimant's injuries did not arise out of and in the course of his employment. *Id.*, ¶ 29. The appellate court's Workers' Compensation Division, however, concluded that the deputy sheriff was acting in the course of employment, and was "no longer embarked upon a personal deviation," after he "received instructions from his dispatcher, prior to his injuries, directing him to proceed to a specific location and assist a co-employee, and he was involved in the accident while in route to that location." *Id.*, ¶ 25.

¶ 29    Similarly, in *City of Springfield,* 244 Ill. App. 3d 408, a police officer was injured in an automobile accident while returning to the police station from lunch. Like here, the facts showed

that the officer was able to do whatever he wanted during his lunch break, and that he was not responding to a call or emergency situation at the time of the accident. However, the facts in *Springfield* also showed that the officer was assigned an unmarked police car for 24 hours per day, that he was required to monitor the radio while using the car at all times, and that he was to respond to any calls he received, even if he was off duty. The court noted that the officer "was not only subject to being 'on call'; he had his radio turned on and was 'on call' to the extent he would have responded in the normal course to any request for assistance or emergency he encountered." *City of Springfield*, 244 Ill. App. 3d at 411. In those circumstances. the court found that the Commission's decision that the officer's injury arose out of the scope of employment was not against the manifest weight of the evidence. *Id*. "Actively monitoring the police radio during the course of claimant's return trip to the station is sufficient evidence upon which the Commission could draw the conclusion that the employer intended to retain authority over claimant at the time his injuries arose." *Id*.

¶ 30    Most importantly, *Johnson* and *Springfield* arose after the Commission's ultimate decision regarding whether to award Workers' Compensation benefits. They did not arise from the same procedural posture as this case, an appeal from a section 2-619 dismissal, wherein this court must take the well-pleaded facts in the complaint as true, interpret all pleadings, supporting documents, and reasonable inferences therefrom, in the light most favorable to the plaintiff. *Wackrow,* 231 Ill. 2d at 422. See also *Snyder v. Heidelberger,* 2011 IL 111052, ¶ 8 (a court cannot grant a motion to dismiss under these sections unless the plaintiff can prove no set of facts that would support a cause of action).

¶ 31    Moreover, the facts of *Johnson* and *Springfield* illustrated the police department's intent to retain authority over the officers during their lunch breaks in those cases. Specifically, in

12

*Johnson*, the officer had been dispatched and instructed to go to a particular location when his injuries occurred, and in *Springfield*, the officer was injured while actively monitoring the police radio, as he was required to do, while driving back from his lunch break. Here, there are no facts contained in the pleading or affidavits that similarly establish the police department's attempt to retain authority over the officers before they returned from their lunch. The record does not contain any evidence regarding police department policies regarding lunch breaks, whether the officers were required to monitor their radio during that time, or any other facts which would establish, conclusively and as a matter of law, that the department retained authority over the officers at the time of the accident.

¶ 32    To avoid this conclusion, defendant asks this court to take judicial notice of the Chicago Police Department directive entitled "Payroll and Timekeeping – Attendance," which it attaches to its appellate brief in an "Appendix." This directive was never before the trial court, and, accordingly, it does not otherwise appear in the appellate record. In general, a party may not rely on matters outside the record to support its position on appeal. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009); *Wauconda Fire Protection District v. Stonewall Orchards, LLP,* 343 Ill. App. 3d 374, 377 (2003) ("Attachments to briefs not included in the record on appeal are not properly before the appellate court, and they cannot be used to supplement the record."). Thus, if the materials are not taken from the record, they may not generally be placed before the appellate court in an appendix, and a reviewing court may disregard those materials. *Hubeny v. Chairse*, 305 Ill. App. 3d 1038, 1042 (1999). See also *Keener*, 235 Ill. 2d at 346 (when a party disregards this rule, a reviewing court may strike the brief or "simply disregard the inappropriate material").

¶ 33    Nonetheless, even if we were to consider the directive, it raises more questions than answers, which should be considered by the trial court on remand. This directive provides that officers are:

> "granted one 30 minute meal period each watch and will not be subject to radio assignments or required to monitor the radio during the meal period. *** Lunch will normally be taken within the district of assignment. Unit commanding officers may make exceptions if conditions warrant. In those instances, lunch may be taken within a reasonable distance in an adjoining district."

¶ 34    The directive further provides that, when officers take a meal break, they are to "clear their meal period with the OEMC dispatcher prior to entering the eating establishment and will notify the OEMC dispatcher of their return to duty status after leaving the eating establishment."

¶ 35    In this case, there is nothing in the record to establish whether the above policy is generally followed, or whether the officers actually followed the policy in this case. Specifically, the pleadings and competing affidavits do not indicate whether the officers requested or were granted an exception to get lunch outside of the district, whether the location of the restaurant would be considered "a reasonable distance" from their district, or whether the officers had notified the dispatcher that they were returning to duty status after leaving the restaurant. Without any evidence regarding how the directive applied generally or whether it was followed in this case, this directive does not alter our conclusion that the dismissal of plaintiff's claims pursuant to section 2–619(a)(9) was erroneous.

¶ 36    Accordingly, we conclude that the circuit court erred in granting defendant's section 2–619(a)(9) motion to dismiss. We reverse and remand for further proceedings consistent with this order.

¶ 37     Reversed and remanded.